HUGH MENEFEE, INC., a Hawaii corporation, Plaintiff-Appellant, *v.* HALE KEKOA JOINT VENTURE formerly known as Hale Waikahe Joint Venture, a Hawaii Partnership; ERNEST C. HICKSON; CALIFORNIA-HAWAII DEVELOPMENT, INC., a California corporation; CALIFORNIA-HAWAII 72-5, a California Limited Partnership; CALIFORNIA-HAWAII 72-4, a California Limited Partnership; and WAIKAHE PARTNERS, a California Limited Partnership, Defendants-Appellees

NO. 7221

CIVIL NO. 49413

JULY 27, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* Appellant Hugh Menefee, Inc. appeals the circuit court's determination at summary judgment that it was not entitled to certain brokerage fees under a listing contract with Appellee Hale Kekoa Joint Venture.

We find that certain terms of the contract are ambiguous and that genuine issues of material fact exist as to their meaning and we reverse.

The listing contract between Appellant Menefee and Appellee Hale Kekoa Joint Venture was entered into on January 12, 1974. It

provided that Menefee would be the exclusive broker for the condominium project, Hale Waikahe, which was to be developed by Hale Kekoa. Under Paragraph 3 of the contract, appellee agreed to

pay Broker [Appellant Menefee] a commission of five percent (5%) of the gross sales price for any fully executed and binding sale effected or contracted for, subject to provisions of paragraph #5 below. . . .

Subsequent to the signing of the contract, the Hale Waikahe project proceeded in several respects. The Real Estate Commission of the State of Hawaii issued a Preliminary Public Report pursuant to Hawaii Revised Statutes (HRS) § 514-35; the developer obtained a commitment for both construction loan financing and permanent mortgage financing from Washington Mortgage Company; and Appellant Menefee sold a disputed number of units in the proposed 231-unit condominium.[1]

For reasons not clear on the record, the Hale Waikahe project was not completed as planned. According to appellees, interim and mortgage financing were slowed by building permit delays and newspaper reports that the State might condemn the subject property; consequently, funds from the permanent mortgage lender could not be obtained quickly enough to meet the project completion date upon which the permanent mortgage lender conditioned its mortgage financing.

In any case, in November of 1974, the developer had the escrow agent cancel the sales contracts obtained by Appellant Menefee and return the buyers' deposits. Thereafter, Appellee/Developer Hale Kekoa Joint Venture obtained a loan of $260,000 from its lender, paid arrearages and obtained an extension of time on the agreement of sale for the subject parcel, designed a 170-unit project for the property, hired a new contractor, renamed the project,[2] and obtained an added development partner with whom it began construction of the project in 1976.

---

[1] According to the chief executive officer of the Hale Waikahe project, 110 "reservation contract buyers" were attributable to Menefee. Appellant Menefee claimed it sold 211 units.

[2] The project name apparently was originally Hale Kekoa but was finally changed to 1260 Richard Lane.

On March 18, 1976, appellees cancelled the January 10, 1974 listing contract with Appellant Menefee. On September 16, 1976, appellant filed the instant action to obtain brokerage fees for its sale of proposed condominium units under the January 10, 1974 contract. On September 26, 1978, the circuit court granted appellees' motion for summary judgment presumably on the ground that it was beyond factual dispute that appellant was not entitled to fees under the contract.

On review of the circuit court's entry of summary judgment, we must determine whether "the inferences to be drawn from the . . . facts alleged in the materials . . . considered . . . in the light most favorable to the party opposing the motion . . ." raise a dispute as to appellant's entitlement to its five per cent fee under the listing contract. *Gealon v. Keala,* 60 Haw. 513, 518-19, 591 P.2d 621, 625 (1979); *Ottensmeyer v. Baskin,* 2 Haw. App. 86, 625 P.2d 1069, 1071 (1981).

Appellees contend two provisions of the contract precluded Appellant Menefee from receiving its claimed five per cent brokerage fee.

First, appellees rely on Paragraph 24 of the listing agreement to contend that the contracts entered into between Menefee and buyers of the proposed condominium units were not "binding contracts" for which they were entitled to a commission:

24. The phrase "fully executed and binding sales contract" and similar phrases as used herein refer to a contract for the sale or reservation of an apartment on a form approved by Developer and Broker executed by the purchaser and Developer, subject only to (1) the same becoming a binding agreement pursuant to the provisions of Chapter 514, Hawaii Revised Statutes, as amended, and (2) the approval of purchaser's mortgage financing by the take-out lender as approved by Developer, if the sales contract or reservation agreement is made subject to the same.

According to appellees, subsection (1) of Paragraph 24 requires that a final public report be issued pursuant to HRS § 514-41 before any sale of a proposed condominium can become "binding". HRS § 514-41 states in pertinent part:

The developer or any other person offering any unit in a condominium project prior to completion of its construction

shall not enter into a binding contract or agreement for the sale or resale thereof until:

    (1) *A true copy of the real estate commission's final public report thereon with all supplementary reports, if any has been issued, has been given to the prospective purchaser,*

    (2) The prospective purchaser has been given an opportunity to read the reports, and

    (3) The prospective purchaser executes his receipt for the reports.

(Emphasis supplied.) In this case, a final public report was never issued; therefore, appellees argue, none of the sales contracts between Appellant Menefee and prospective buyers were "binding" contracts within the meaning of Paragraph 24.

Appellees cite Paragraph 9 as additional evidence that the parties intended "binding" to be defined by HRS § 514-41:

    9. It is understood that the laws of the State of Hawaii provide that no binding contract or agreement for the sale of any unit may be entered into until true copies of the Final Public Report, the Preliminary Report, and all Supplementary Reports, if any, have been issued and given to the purchaser. . . .

    .    .    .    .

    Broker will give each purchaser a copy of the Preliminary and/or Final and/or Supplemental Public Report and obtain an executed receipt for the Public Report(s) before Broker accepts any deposits or permits any Reservation Agreement and/or Sales Contract to be accepted. Developer shall furnish sufficient copies of all documents that are to be furnished. . . .

Under this view, Paragraph 9 was supplied expressly for the purpose of defining the phrase "pursuant to the provisions of Chapter 514, Hawaii Revised Statutes . . ." in Paragraph 24 of the contract.

In our view, Paragraph 24 may also be fairly interpreted by a reasonable mind as excluding from the listing agreement's definition of "binding" "the provisions of Chapter 514 . . ." as well as "the approval of purchaser's mortgage financing by the take-out lender as approved by developer."

As for Paragraph 9, viewed in the light most favorable to appellant, it could be fairly interpreted as nothing more than a statement by the parties of what they thought the law of the State of Hawaii was and how the parties would comply therewith. Consequently, a fac-

tual dispute exists as to whether the sales contracts were "binding" within the meaning of the listing contract.

Appellees also claim in the alternative that under Paragraph 5 of the January 10, 1974 listing agreement, Hale Kekoa Joint Venture abandoned the project and is therefore obligated to pay only $300 for each sales contract:

> 5. Should Developer decide to abandon the project for any reason, Developer will pay Broker a fixed commission of three hundred and no/100th Dollars (300.00) for each apartment on which Broker has secured a fully executed and binding sales contract in lieu of the aforesaid five percent commission.

Appellant Menefee responds, and we agree, that, viewed in the light most favorable to it, the facts could be reasonably interpreted by a jury as reflecting a redesign of the project, rather than an abandonment. Thus, on remand, if the sales contracts are found to be "binding" under Paragraph 24, the jury is entitled to consider whether the project was abandoned.

Having found genuine issues of material fact as to the meaning of the terms "abandonment" and "binding", we reverse and remand for proceedings consistent herewith.

*Leigh-Wai Doo (James N. Duca* and *Charles S. Lima* on the briefs, *Woo Kessner & Duca* of counsel) for appellant.

*Mary Blaine Durant (Brown & Bettencourt* of counsel) for appellees