JEAN I. KING and MIRIAM R. M. KELLEY, Plaintiffs-Appellants, *v.* ILIKAI PROPERTIES, INC., a Delaware Corporation, WESTERN INTERNATIONAL HOTELS COMPANY, a Delaware Corporation, UNITED AIRLINES, INC., a Delaware Corporation, ASSOCIATION OF OWNERS OF THE ILIKAI APARTMENT BUILDING, and MELVIN SHIGETA, Defendants-Appellees, and JOHN DOE CORPORATION I-X, JOHN DOE PARTNERSHIP I-X, JOHN DOE JOINT VENTURES I-X, Defendants

NO. 7166

CIVIL NO. 51059

AUGUST 24, 1981

HAYASHI, C.J., PADGETT, J., CIRCUIT
JUDGE WAKATSUKI IN PLACE OF
JUDGE BURNS, DISQUALIFIED

OPINION OF THE COURT BY HAYASHI, C.J.

This appeal is taken from the order granting summary judgment for each of the defendants-appellees.

There are two issues raised on this appeal: (1) whether this court has jurisdiction over this appeal involving multiple parties where the notice of appeal was filed on the same day that summary judgment was entered for the last of the three defendants-appellees; and (2) whether the court below erred in granting summary judgment for the defendants-appellees. We hold that this court has jurisdiction to hear the appeal and affirm the orders granting summary judgment for the defendants-appellees.

On January 11, 1977, at approximately 11:30 p.m., plaintiffs-appellants, Jean I. King (King) and Miriam R. M. Kelly (Kelly), were assaulted and robbed by three unidentified persons in Room 821 of the Ilikai Tower Building. Room 821 was owned by Melvin Shigeta (Shigeta) who had leased the room to King. At the time of this incident, Kelly was spending the night with King. The assailants gained access to Room 821 when King opened the door to the room believing that she was about to receive a message from the hotel desk.

At the time of the assault, the Tower Building of the Ilikai Hotel was operated as a hotel by Ilikai Properties, Inc. (Ilikai) and it also contained private condominium units. The Association of Owners of the Ilikai Apartment Building (Association) was comprised of owners of condominium units in the Tower Building, and the unit owned by Shigeta was included in the Association.

On March 23, 1977, plaintiffs-appellants filed suit against Defendants-Appellees Ilikai, Shigeta, and various John Does, alleging that the injuries they sustained in the assault were proximately caused by the failure of Ilikai, Shigeta, and various John Does to make the premises safe. On June 13, 1977, Shigeta cross-claimed against Ilikai. Subsequently, on July 21, 1978, the Association was identified by the plaintiffs-appellants as one of the John Doe corporations named in the complaint.

On May 15, 1978, Ilikai filed a motion for summary judgment against plaintiffs-appellants and Shigeta. On August 10, 1978, the court entered an order granting summary judgment in favor of

Ilikai and against plaintiffs-appellants and Shigeta. On July 17, 1978, Shigeta filed motion for summary judgment against plaintiffs-appellants and on August 16, 1978, the court entered an order granting summary judgment for Shigeta. On August 22, 1978, Association filed a motion for summary judgment against the plaintiffs-appellants, and on September 8, 1978, the court entered an order granting summary judgment for Association and against plaintiffs-appellants. On September 8, 1978, plaintiffs-appellants filed a notice of appeal from the orders granting summary judgment for Ilikai, Shigeta, and Association. A separate judgment in favor of the Association embodying the same ruling set out in the September 8, 1978, order granting summary judgment was filed in the clerk's office on September 27, 1978. No other judgment in this form was filed for any of the other defendants-appellees.

The defendants-appellees argue that this court lacks jurisdiction to hear this appeal because plaintiffs-appellants' appeal was prematurely filed. They contend that the September 8, 1978, order for summary judgment filed in favor of the Association does not operate as a final, appealable order because a separate entry of judgment was not filed until September 27, 1978.

We have recently had several opportunities to address the question of whether an appeal has been timely filed. See Sturkie v. Han, 2 Haw. App. 140, 627 P.2d 296 (1981); Employees' Retirement System v. Big Island Realty, Inc., 2 Haw. App. 151, 627 P.2d 304 (1981); Price v. Christman, 2 Haw. App. 212, 629 P.2d 633 (1981); Jacob Young Soo Park v. Romeo A. Esperanza, 2 Haw. App. 232, 629 P.2d 644 (1981).

We are at a loss to understand the need for a separate entry of judgment on behalf of the Association only, when the order granting summary judgment filed on September 8, 1978 comported with the standards required for the entry of such a judgment. It was a written order signed by the judge granting the order and duly filed in the clerk's office on the same day. Marn v. Reynolds, 44 Haw. 655, 361 P.2d 383 (1961). In all respects, it was and is a final, appealable order that also operated as final adjudication of all the claims of the parties. Rule 54(b), Hawaii Rules of Civil Procedure; Sturkie v. Han, supra; Jacob Young Soo Park v. Romeo A. Esperanza, supra. See also City and County v. Midkiff, 51 Haw. 273, 458 P.2d 661 (1976), wherein the supreme court held that:

When . . . the trial court's disposition of a case involving multiple claims or multiple parties is embodied in several orders, no one of which embraces the entire controversy but which collectively do so, it is a necessary inference from Rule 54(b) that the order collectively constitute a final judgment and that entry of the last of the series of orders gives finality and appealability to all.

51 Haw. at 275.

On review of a motion granting summary judgment, viewing the evidence and logical inferences derived therefrom in the light most favorable to the plaintiffs-appellants, we must be satisfied that no genuine issues of material fact exist so that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista*, 61 Haw. 144, 598 P.2d 161 (1979); *Hugh Menefee v. Hale Kekoa Joint Ventures*, 2 Haw. App. 311, 631 P.2d 597 (1981).

We have carefully reviewed the record and conclude that there is no genuine issue of material facts; and, therefore, the only issue is whether the defendants-appellees are entitled to judgment as a matter of law.

Ilikai argues that it had no duty to protect the plaintiffs-appellants from acts committed by third parties, citing provision of RESTATEMENT (SECOND) OF TORTS § 315 (1965):

There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

a) a special relationship exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

b) a special relation exists between the actor and the other which gives to the other a right to protection.

"Special relationships" as defined in the Restatement include common carrier-passenger, innkeeper-guest, and custodian-inmate. As King and Kelly were not guests of the hotel at the time the incident occurred, no special relationship existed between the plaintiffs-appellants and Ilikai that would give rise to the imposition of a duty to protect plaintiffs-appellants from the acts of third parties. Plaintiffs-appellants argue that because hotels attract dangerous persons, the Ilikai should have known such persons would come onto the premises so that its subsequent failure to notify persons of the potential for victimization via posted warning signs and increased surveillance amount to a breach of duty. In our view,

such a position is unreasonable.

King had never notified Ilikai of any previous security problems. She had never been victimized on the premises before, nor did she allege that she knew of others who had been victimized.[1]

Shigeta argues that he had no duty to protect King from the criminal acts of third parties. The relationship between Shigeta and King is that of landlord-tenant. Kelly, as a guest of King, was owed no duty by Shigeta. Courts have been reluctant to impose a duty on landlords to protect tenants from criminal acts of third parties. RESTATEMENT (SECOND) OF TORTS § 315 (1965), *supra*. In *Goldberg v. Housing Authority of Newark*, 38 N.J. 578, 186 A.2d 291 (1962) the court found no duty to provide police protection in a housing project. The court said:

> Whether a duty exists is ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk and the public interest in the proposed solution.

*Goldberg* at 293.

*Smith v. Chicago Housing Authority*, 36 Ill. App. 3d 967, 344 N.E.2d 536 (1976) refused to impose liability on the landlord where plaintiff's decedent was shot by a person upon the premises. Citing the reasoning used in *Trice v. Chicago Housing Authority*, 14 Ill. App. 3d 97, 302 N.E.2d 207 (1973), which reached a similar conclusion, the court stated:

> In determining whether a duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant must be taken into account. Imposition of a duty does not depend upon foreseeability alone.

*Smith* at 971.

The court went on to hold that in the absence of physical or causal connection to the premises itself that result in the injury, liability would not be imposed upon the landlord for the acts of third parties.

Plaintiffs-Appellants rely on the ruling in *Kline v. 1500 Massachusetts Avenue Apartment Corporation,* 141 App. D.C. 370, 439 F.2d

---

[1] King had been living in Room 821 for approximately a year when the incident occurred.

477 (1970) wherein on the factual circumstances peculiar to that case, the court imposed a duty to protect tenants from the criminal acts of third persons. In *Kline,* security provided in the common areas had declined drastically from the time Kline moved into the building to the time she was attacked in the common hallway. Additionally, the landlord in *Kline* had been put on notice of numerous such attacks occurring since the decline in security; and many tenants, including Kline, had voiced their concerns to the landlord therein. On these particular facts, the court found a breach of duty. However, no such special circumstances exist in the instant case that would warrant our concluding that Shigeta breached a duty owed plaintiffs-appellants. To do so would unjustly place upon the property owner a legal duty which is impossible of performance. Moreover, if no duty was owed King, it is axiomatic that even less was owed Kelly.

With respect to Association, it is even further removed from the chain and suffice to say it had no "special relationship" to plaintiffs-appellants that would support a finding that it could be held liable for plaintiffs-appellants' injuries.

Finding no material fact in dispute, and viewing the evidence in the light most favorable to plaintiffs-appellants, Ilikai, Shigeta, and Association were entitled to judgments as a matter of law. *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 607 P.2d 1304 (1980).

Finally, as to plaintiffs-appellants' claim at oral argument that the trial court erred in preventing them from pursuing further discovery in support of their view that the Ilikai was an inherently dangerous place that attracted persons bent on criminal intent, we decline to address this issue for plaintiffs-appellants have failed to properly preserve it as a specification of error on appeal. Supreme Court Rule 3(b)(5); *Hana Ranch v. Kaholo, et al.,* 2 Haw. App. 329, 632 P.2d 293 (1981).

Affirmed.

*Wayne D. Parsons* for appellants.

*Roy F. Hughes (Libkuman, Ventura, Moon & Ayabe)* for appellee-Ilikai.

*Roy Vitousek, III (Stephen B. McDonald* on the brief, *Cades Schutte Fleming & Wright)* for appellee-Association.

*Carlton B. Reid (Robert P. Richards* on the brief, *Davis, Playdon & Gerson)* for appellee-Shigeta.