JANE DOE, Plaintiff–Appellant, v. **GROSVENOR PROPER-TIES (HAWAII) LTD.; GROSVENOR INTERNA-TIONAL (HAWAII) LTD.; FREEMAN GUARDS INC.**, a California Corporation; **WESTINGHOUSE ELECTRIC CORPORATION**, a Pennsylvania Corporation, Defendants–Appellees, and **JOHN DOES 1–10; JANE DOES 1–10; DOE PARTNERSHIPS 1–10; DOE CORPORATIONS 1–10; ROE NON–PROFIT CORPORATIONS 1–10**; and **ROE GOVERNMENTAL ENTITIES 1–10**, Defendants

NO. 15156

(CIV. NO. 89–2752)

MARCH 27, 1992

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY LUM, C.J.

Plaintiff–appellant Jane Doe (plaintiff) appeals the order of the Circuit Court of the First Circuit, granting the motions for summary judgment of defendants–appellees Grosvenor Properties, Ltd. and Grosvenor International, Ltd. (Grosvenor), as well as Westinghouse Electric Corporation (Westinghouse), on plaintiff's claim that defendants negligently failed to protect her from being assaulted in the elevator of the Dillingham Transportation Building. Grosvenor and Westinghouse argued in the court below that they had no duty to protect plaintiff from the criminal acts of plaintiff's assailant. We agree and affirm.

### I.

Plaintiff was a legal secretary working in the Dillingham Transportation Building. During her lunch hour on September 9, 1987, she picked up some laundry for her employer and entered the makai elevator from the lobby of the Dillingham Transportation Building. An unknown male also entered the elevator at the same time. The elevator reportedly stalled between the first and second floors, whereupon the man pressed a button on the elevator control

panel, took out a knife, and robbed and sexually assaulted plaintiff. The man then pressed a button on the control panel and after the elevator opened on the second floor, he exited, escaping down a stairwell.

The Dillingham Transportation Building is an office building open to the public. The building and elevators are managed by Grosvenor Properties, Ltd., which is wholly owned by Grosvenor International, Ltd. Prior to the assault on appellant, Grosvenor had received no complaints concerning the security of the building elevators, and had no reports of any violent crimes on the premises or of suspicious individuals in the common areas of the building.

At the time of the assault, Westinghouse Electric Corporation was under contract with Grosvenor to maintain and repair the building elevators. Two days before the assault, at Grosvenor's request, Westinghouse inspected the subject elevator for any problems that might cause the elevator to stop between floors and reported that the car and controller were operating normally. Westinghouse also spent another hour examining the alarm bell and corrected a problem caused by a loose wire. On the day of the assault, the elevator was being operated pursuant to a valid permit issued by the Bureau of Boilers and Elevators, State of Hawaii. The stop button and alarm in the elevator were not connected, and were not required to be connected under the applicable rules and regulations. One month after the incident, Westinghouse connected the elevator alarm bell and stop button.

## II.

A ruling on a motion for summary judgment is reviewed de novo, and the question before the reviewing court is whether there are any genuine issues of material fact raised by the record or whether the movant was entitled to judgment as a matter of law. *First Hawaiian Bank v. Weeks*, 70 Haw. 392, 772 P.2d 1187 (1989); *Namauu v. City & County*, 62 Haw. 358, 614 P.2d 943 (1980).

"It is fundamental that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." *Bidar v. Amfac, Inc.*, 66 Haw. 547, 551, 669 P.2d 154, 158 (1983). Whether there is a relationship between the parties such that the community will impose a legal obligation on the defendant for the benefit of the plaintiff, is entirely a question of law. *Id.* at 552, 669 P.2d at 158.

## A.

In *King v. Ilikai Properties, Inc.*, 2 Haw. App. 359, 632 P.2d 657 (1981), the Court of Appeals noted that whether a duty exists is a question of fairness that involves a weighing of the nature of the risk, the magnitude of the burden of guarding against the risk, and the public interest in the proposed solution. *Id.* at 363, 632 P.2d at 661; *see also Johnston v. KFC Nat'l Management Co.*, 71 Haw. 229, 232, 788 P.2d 159, 161 (1990). Under ordinary circumstances, criminal acts are not reasonably to be expected, and are so unlikely in any particular instance that the burden of taking continual precautions against them almost always exceeds the apparent risk. **W.P. KEETON, PROSSER AND KEETON ON TORTS** § 33 (5th ed. 1984). Thus, courts have generally declined to impose a duty to protect another against the criminal acts of a third party. *Seibel v. City & County*, 61 Haw. 253, 257, 602 P.2d 532, 536 (1979); *see* **RESTATEMENT (SECOND) OF TORTS** § 315, at 122 (1965); *see generally* Note, *Knodle v. Waikiki Gateway Hotel, Inc.: Imposing a Duty to Protect Against Third Party Criminal Conduct on the Premises*, 11 U. HAW. L. REV. 231 (1989) (discussing the duty of a possessor of land to protect others from third party criminal acts under the decisions of the Hawaii Supreme Court).

In *Pickard v. City & County*, 51 Haw. 134, 452 P.2d 445 (1969), we held that an "occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual." *Id.* at 135, 452 P.2d at 446. Although the *Pickard* rule

of reasonable care regardless of status distinctions continues to define a landowner's duty of care in this jurisdiction, status distinctions remain important in the decision to create exceptions to the general rule that it is unreasonable to impose a duty to anticipate and control the actions of third persons. *Imposing a Duty to Protect, supra*, at 237. Exceptions to the general rule that there is no duty to protect may arise when justified by the existence of some special relationship between the parties. RESTATEMENT (SECOND) OF TORTS § 315 (1965); *see, e.g., Cuba v. Fernandez*, 71 Haw. 627, 631–32, 801 P.2d 1208, 1211 (1990). Section 314A of the Restatement sets forth a non–exclusive list of special relationships upon which a court may find a duty to protect. RESTATEMENT (SECOND) OF TORTS § 314A comment b (1965). The section provides:

(1) A common carrier is under a duty to its passengers to take reasonable action

(a) to protect them against unreasonable risk of physical harm, and

(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Plaintiff claims that a duty to protect should have been imposed on Grosvenor under § 314A(3). Restatement (Second) § 314A(3) describes the relationship existing between a possessor of land and his invitee. *See* RESTATEMENT (SECOND) OF TORTS

§ 314A comment c (1965) (rules stated in this section apply only where the relation exists between the parties and a possessor of land is not under any such duty to one who has ceased to be an invitee). The Restatement (Second) § 332 states:

> (1) An invitee is either a public invitee or a business visitor.
>
> (2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
>
> (3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

As a result of *Pickard*, this jurisdiction has not had occasion to determine whether the invitee relationship is limited by the definition of a public invitee, or that of a business visitor.[1] In this case, where the definition of an invitee is relevant solely to determine the scope of Restatement § 314A(3), we decline to adopt the broader, public invitee definition, finding that there is no basis upon which to base a duty to protect where a landholder holds open his land gratuitously, and does not receive or hope to receive monetary, commercial, or other tangible benefit from the invitation. *Cf.*

---

[1] The § 332 distinction between a public invitee and a business visitor reflects an important conflict of opinion about the definition of the landholder–invitee relationship. *See* KEETON, *supra*, § 61, at 420. The theory reflected in § 332(3) is that a landholder's duty of affirmative care, including the duty to protect, is imposed as the price the landholder must pay for the economic benefit derived from visitors. *Id.*; *see, e.g., Socha v. Passino*, 105 Mich. App. 445, 306 N.W.2d 316, 318 (1981) (invitee is a person who may reasonably be said to confer on, or be anticipated to confer on the owner a business, commercial, monetary, or other tangible benefit to the occupant). Section 332(2) states what appears to be the older theory that the basis of a landholder's duty to an invitee is the implied representation, by a landholder who invites the public onto the land for a purpose of his own, that reasonable care has been exercised to make the premises safe for those who come onto the land for the purpose. KEETON, *supra*, § 61, at 422.

*Wolsk v. State*, 68 Haw. 299, 711 P.2d 1300 (1986) (State had no duty to protect persons who were assaulted while camping in a State park).[2]

This is consistent with § 344 of the Restatement (Second). The section is set forth under Title E, Special Liability of Possessors of Land to Invitees, and states:

> A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons . . . and by the failure of the possessor to exercise reasonable care to
>
> (a) discover that such acts are being done or are likely to be done, or
>
> (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f to § 344 provides:

> Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience is such that he should reasonably anticipate careless or

---

[2] As we stated earlier, § 314A is a non–exclusive list of relationships, and no doubt there may be situations in which it may be fair to impose a duty to protect upon a landholder whose invitees are not business visitors. However, we leave that to another case.

> criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

It is clear that the relationship between Grosvenor and plaintiff was that of landlord and tenant. ***Rowe v. State Bank of Lombard***, 125 Ill. 2d 203, 531 N.E.2d 1358 (1988) (plaintiffs, employees working at a leased office in one of several buildings located in an office park owned by defendants, had a landlord–tenant relationship with defendants). ***Craig v. A.A.R. Realty Corp.***, 576 A.2d 688 (Del. Super. 1989) (landlord–tenant principles applicable to suit brought by the survivor of an employee of a shopping mall who had been abducted from the mall parking lot). The landlord–tenant relationship does not fall within the terms of Restatement § 314A(3). A tenant has a right to possession of the land, and is not on the land for a purpose connected with business dealings with the landowner. In addition, the landlord–tenant relationship is not a "special relationship" in this jurisdiction. As we noted in our decision in ***Cuba v. Fernandez***, we have, in the past, declined to recognize landlord–tenant or analogous relationships as giving rise to a special relationship duty to protect. 71 Haw. at 634 n.4, 801 P.2d at 1212 n.4; *see Moody v. Cawdrey & Assocs., Inc.*, 6 Haw. App. 355, 721 P.2d 708, *rev'd*, 68 Haw. 527, 721 P.2d 707 (1986) (following ***King v. Ilikai Properties, Inc.***, 2 Haw. App. 359, 632 P.2d 657 (1981)).

Plaintiff argues that if a lessor has a duty to warn of dangers in the common areas over which he has no control, then the lessor certainly has the duty to protect in those areas over which he has control, citing our decision in ***Kole v. Amfac, Inc.***, 69 Haw. 530, 530, 750 P.2d 929, 929 (1988) (owner–lessor of a condominium has duty to warn his lessee of known hazardous conditions in common area of condominium project). Plaintiff also claims that since

the landlord retained control over the common areas, this retention provides a basis for imposition of a duty to protect in this case.

Aside from the obvious inapplicability of *Kole* to this case,[3] our reversal of *Moody*, in which the Court of Appeals found that association of apartment owners had a special relationship duty to protect because of its complete control over the common areas of the apartment complex, makes clear that a landlord's control over the land, or the absence thereof, does not itself create a duty to protect. As we stated in *Cuba*, all landowners could be said to have controlled their property. 71 Haw. at 634, 801 P.2d at 1212. However, control alone would be an insufficient basis to find a duty to protect in the absence of any other factors that might show that it would be fair or reasonable to require a landlord to anticipate the acts of a third person and guard against them.

The landlord–tenant relationship between plaintiff and defendant Grosvenor does differ, in this case, from the traditional landlord–tenant relationship in that defendant Grosvenor runs a building open to the public at large, not one in which the leased property and common areas are generally limited to tenants and their guests. Further, plaintiff was present in the elevator, a common area of the building, because she was employed by a tenant of an office building. Grosvenor was presumably an agent of the owner[4] of the building and would thus, have the same duty of care in managing the building as would the building owner. *Moody*, 6 Haw. App. at 362, 721 P.2d at 713; RESTATEMENT (SECOND) OF

---

[3] In *Kole*, we stated that the lessor's duty to warn was "separate and distinct" from any other obligation arising from membership in a condominium association, and that the duty arose when there was a "known" danger not obvious or readily discoverable by the tenant. 69 Haw. at 531–32, 750 P.2d at 930. In this case, even had plaintiff preserved the separate issue of duty to warn on review, there is no evidence that Grosvenor knew that the assault might occur.

[4] It is not clear from the record whether Grosvenor is an agent of the building owner, or the owner of the building itself.

TORTS § 383, at 287. The business of the owner of the building was operation of an office building, the common areas of which were held open to the public, and were essential parts of that business as they provided access to the offices of building tenants. Therefore, plaintiff, who was assaulted while returning to the office in which she was employed, was in the building elevator for a purpose connected with the business of the building's owner and could be classified as a business invitee under § 314A(3). *Craig v. A.A.R. Realty Corp.*, 576 A.2d 688 (Del. Super. 1989) (salesperson who worked at a shopping mall assumed to be business invitee of landlord); *Latham v. Aronov Realty Co.*, 435 So. 2d 209 (Ala. 1983) (employee of a tenant is an invitee of the landowner); *Cf. Morgan v. Bucks Assocs.*, 428 F. Supp. 546 (E.D. Pa. 1977) (owner who leases to tenants but retains possession and control of common areas which are to be used by business invitees of tenants has an obligation to keep those areas safe for business invitees in absence of contrary lease provision).

However, even if plaintiff was a business invitee, examination of Grosvenor's situation reveals an insufficient basis upon which to find a special relationship duty to protect. Grosvenor had received no complaints concerning the security of the building elevators, had no reports of any violent crimes on the premises or of suspicious individuals in the common areas of the building, and there was no evidence that in going about its business of managing the office building, Grosvenor unreasonably failed to discover and protect against the assault. *Cf. Latham*, 435 So. 2d at 213 (no landlord duty to protect woman shopper assaulted in mall parking lot). Consequently, we find no special relationship duty under § 314A(3).

We therefore affirm summary judgment for Grosvenor. Nothing in the facts of this case distinguishes it from others in which we have declined to find a duty to protect, or shows that it would be fair or reasonable to impose a duty to protect on Grosvenor.

## B.

Plaintiff argues that Westinghouse had a duty to protect her from her assailant arising under § 324A of the Restatement (Second) which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owned by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

The general rule is that one claiming damages for injuries either to person or property occasioned by negligence on the part of the defendant has the burden of proving a prima facie case of negligence by a preponderance of the evidence. 29 AM. JUR. 2D *Evidence* § 134, at 167 (1967); KEETON, *supra*, § 38; *see Waugh v. University of Hawaii*, 63 Haw. 117, 124, 136, 621 P.2d 957, 961–62, 970 (1980).

For § 324A to apply, a person must "undertake, gratuitously or for consideration, to render services to another." Plaintiff argues that the service Westinghouse undertook to provide was to connect the stop button in the elevator to the alarm bell, and that when Westinghouse failed to render this service, plaintiff was harmed.

The terms of Westinghouse's contract with plaintiff provided that Westinghouse had the responsibility to "periodically examine, clean, lubricate, adjust and, when conditions warrant, repair or

replace the following safety devices[] . . . alarm bells." Further, Westinghouse agreed to make:

> only those replacements, adjustments and repairs required under this agreement which are necessary due to ordinary wear and tear. We are not obligated to make adjustments, repairs or replacements necessitated by any other cause, . . . .
>
> We will not be required to . . . install new devices on the equipment which may be recommended or directed by insurance companies, federal, state, municipal or other authorities, to make changes or modifications in design, to make any replacements with parts of a different design[] . . . .

Under these terms, Westinghouse would not be contractually bound to connect the alarm and stop button if this entailed an elevator design change or modification. If, however, the alarm and stop button were connected at the time that Westinghouse's contract became effective, or at any time thereafter, any break in the connection would have been a defective condition that Westinghouse would arguably, have been obligated to repair under the terms of the contract.

Plaintiff failed to produce any evidence showing that there was a connection between the alarm and the stop button during the effective period of Westinghouse's contract with Grosvenor. Therefore, we do not even reach the question of whether Westinghouse should have recognized its contractual duty "as necessary for the protection of a third person." The circuit court was accordingly, correct in rendering summary judgment for Westinghouse.[5]

---

[5] There is evidence that the elevator stalled between floors just prior to the assault on plaintiff. Assuming that this evidence was sufficient to show a breach of contract by Westinghouse, to find a duty under § 324A, a court would also have

### III.

Affirmed.

*Henry N. Kitamura* (*Paula A. Nakayama* with him on the briefs) for plaintiff–appellant.

*William S. Miller* (*Lennes N. Omuro* with him on the brief) for defendants–appellees Grosvenor Properties (Hawaii), Ltd. and Grosvenor International (Hawaii), Ltd.

*William W. Ramos–Saunders* (*James J. Bickerton* with him on the brief) for defendant–appellee Westinghouse Electric Corporation.

### CONCURRING OPINION OF PADGETT, J.

I concur in the result of the majority opinion.

---

to determine whether Westinghouse should have recognized that fulfillment of its contractual obligation was necessary for plaintiff's protection. We do not reach these issues, as plaintiff has not asserted them.