[No. 41904-8-I.   Division One.   October 4, 1999.]
CHRISTIE GRIFFIN, *Appellant*, v. WEST RS, INC., ET AL., *Respondents*.

558

*Philip James Buri* of *Brett & Daugert, L.L.P.*, for appellant.

*Steven Douglas Jensen* and *Mark Steven Northcraft* of *Northcraft & Tierney, P.C.*, for respondents.

*Anthony W. Spencer,* pro se.

Cox, J. — At issue in this case of first impression is whether a special relationship creating a duty may exist between a residential landlord and its tenant. Assuming such a relationship exists, we must also decide the nature of the duty owed by the landlord to protect its tenant against foreseeable criminal conduct on the premises. We hold that West RS, Inc., d/b/a Trammell Crow Residential Services had a duty to protect Christie Griffin, its tenant, from foreseeable criminal conduct of another tenant. The trial court's refusal to so instruct the jury was prejudicial error. We reverse and remand for trial.

Christie Griffin rented an apartment in the 250-unit Heatherwood Apartments complex in Federal Way. Trammell Crow manages the complex.[1]

One morning in April 1993, Griffin heard a loud noise while taking a shower. At the time, she dismissed the noise as likely coming from neighbors in an adjacent apartment. But shortly after getting out of the shower, she discovered signs of an intruder. There was dirt and debris on the floor near a closet. There was also dirt on top of the ironing board that was stored inside of the closet. When she looked inside the closet, Griffin noticed that a board covering the crawl space to the attic was askew. As she left her apartment, she also noticed that all three interior locks on her door were unlocked. Griffin was sure she had secured these locks the previous night. Based on these observations, she believed that someone had entered her apartment through the crawl space and left through the front door.

---

[1]The record is unclear whether Trammell Crow owns the complex in addition to managing it. Because neither party has argued that our analysis should be any different and both parties have taken the position in their briefing that Trammell Crow's duty is that of the landlord, we have assumed in our analysis that its duty is that of a landlord.

Griffin immediately went to the manager's office and reported her suspicions. The manager told Griffin that she would send someone to investigate. Two of Trammell Crow's maintenance staff later came to Griffin's apartment. Griffin explained her concerns to them. They borrowed a flashlight from her and shined it into the attic. Seeing nothing there, they screwed a two-by-four across the opening of the crawl space and left. Trammell Crow took no other actions in response to Griffin's complaint.

Two weeks later, Griffin heard another loud noise while showering. Leaving the shower running, she wrapped herself in a towel, stepped out of the bathroom, and walked quietly toward the kitchen. To her surprise, she saw a man there with a nylon stocking over his face pulling a pan out of a drawer. They saw each other simultaneously, and Griffin immediately ran for the front door to escape. She was unable to unlock the door quickly enough, and the man caught her. He hit her over the head with the pan he wielded. They struggled, and he hit her again, this time with such force that he fractured her wrist and broke the handle off the pan. He also started pulling her to the bedroom. Griffin was able to break free and ran, naked, from her apartment. Her neighbors grabbed her assailant in the hallway as he chased her.

Later that day, Griffin learned from the police that her assailant was Anthony Spencer, another tenant who lived next to Griffin at the apartment complex.[2] The police learned by their investigation of the attic and crawl space

[2] In his statement to the police after his arrest, Spencer described his attack on Griffin as follows:

"Today at about 10:00 a.m. or so I went to my old apartment, #133 at Heatherwood, to clean it up. The reason I have to clean it is because I just moved out. I had my old key and unlocked the door and went in. I put some rubber gloves on to clean and I just started freaking out. I knew that an attractive woman lived next door so I decided to go into her apartment and try to watch her. I crawled up through the crawl space and came down into the woman's residence. I came down and waited in a closet inside of her apartment. I walked out and could hear her in the shower. I went into the kitchen and took some money from the table. I grabbed a pan from the stove. After I grabbed the pan the woman walked out into the main room. She was naked and she started to scream at me. I grabbed her and tried to make her stop screaming because I didn't want to be there

above Spencer's apartment that there was a hole in the sheetrock wall separating Spencer's attic from Griffin's. A detective entered the attic from Spencer's apartment, walked through the hole in the sheetrock wall into Griffin's attic area, and then entered Griffin's apartment through the crawl space in the ceiling of her closet. The two-by-four that Trammell Crow's employees had placed across the attic opening did not impede the detective's entry into Griffin's closet from the attic.

Griffin sued Spencer for assault and battery and Trammell Crow for negligence. At trial, the jury found Spencer liable and awarded Griffin substantial damages. The jury also found that Trammell Crow had been negligent, but that its negligence was not a proximate cause of Griffin's injuries.[3]

Griffin appeals the judgment on that verdict in favor of Trammell Crow.

### Duty of Landlord to Tenant

Griffin argues that the trial court committed prejudicial error by refusing to give her proposed instruction that was based on *Nivens v. 7-11 Hoagy's Corner.*[4] We agree.

To prove negligence, a plaintiff must establish the existence of a duty, a breach of that duty, resulting injury, and proximate causation between the breach of the duty

---

anymore. I remember swinging the pan at her. I must of [sic] hit her but I don't know. She fell down and I was just freaking out trying to make her be quiet. She ran out and down the stairs and I ran after her trying to get away. The next thing I know I was tackled by some guys and thrown to the ground." Clerk's Papers at 210-11.

[3]The special verdict form stated:

"Question No. 3: Was Trammell Crow negligent?

"Answer: . . . Yes. . . .

"Question No. 4: Was Trammell Crow's negligence a proximate cause of Christie Griffin's injury or damages?

"Answer: . . . No."

Clerk's Papers at 1467.

[4]133 Wn.2d 192, 943 P.2d 286 (1997).

and the resulting injury.[5] We review de novo claimed errors of law in the giving of jury instructions.[6] The existence of a legal duty is a question of law.[7]

The trial court declined to give Griffin's proposed duty instruction, which stated:

> Trammell Crow had a duty to take reasonable steps to protect Christie Griffin from foreseeable criminal conduct of a third party.

Instead, the trial court gave its own instruction:

> A landlord may be negligent if it undertakes to protect a tenant against a danger of which it knows or in the exercise of ordinary care ought to know, and fails to exercise ordinary care in its efforts, and if the tenant reasonably relied upon the landlord's actions and therefore refrained from taking actions to protect herself.
>
> Likewise, a tenant may be negligent for failing to use ordinary care for the tenant's own safety.

These respective instructions conflict in several important ways. Griffin's proposed instruction states an affirmative duty of the landlord to protect its tenant against such criminal conduct. In contrast, the court's instruction places no affirmative duty on the landlord to protect its tenant against foreseeable criminal conduct. Rather, the duty defined by the court's instruction is limited to the exercise of ordinary care *if* the landlord undertakes action to protect its tenant. This instruction appears to have been based on the doctrine of misfeasance articulated in *Brown v. MacPherson's, Inc.*[8] The court's instruction also conditioned the landlord's negligence in ways that Griffin's proposed instruction did not. Specifically, the tenant must have rea-

---

[5]*Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 474, 951 P.2d 749 (1998).

[6]*Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 92, 896 P.2d 682 (1995).

[7]*Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

[8]86 Wn.2d 293, 545 P.2d 13 (1975).

sonably relied on the landlord's actions and, as a result, must have refrained from taking actions to protect herself. Comparative negligence of the tenant is also part of the court's instruction.

Because Griffin had the burden to prove that Trammell Crow owed her a duty, an essential element for a negligence claim, the central issue that we must first decide is whether Trammell Crow has a greater duty to Griffin than the one defined by the court's instruction. We conclude that there is a greater duty.

At common law, there was no duty to protect others from the criminal acts of third persons.[9] Our Supreme Court has held that landowners have no generalized duty to protect passersby from criminal behavior on the landowners' premises.[10] But no reported Washington decision has expressly addressed the question of whether a landlord has a duty to protect its tenant from foreseeable criminal conduct on the premises.

■ There are conflicting views among the various jurisdictions that have considered the question whether a landlord has a duty to take reasonable steps to protect a tenant from foreseeable criminal acts. Starting with *Kline v. 1500 Massachusetts Avenue Apartment Corp.*,[11] a number of courts have determined that there is such a duty.[12] Other courts have declined to follow this trend.[13]

---

[9]*Nivens*, 133 Wn.2d at 199 (citing *Hutchins*, 116 Wn.2d at 223).

[10]*Hutchins*, 116 Wn.2d at 233.

[11]439 F.2d 477, 43 A.L.R.3D 311 (D.C. Cir. 1970).

[12]*Phillips v. Chicago Hous. Auth.*, 89 Ill. 2d 122, 126-27, 431 N.E.2d 1038, 59 Ill. Dec. 281 (1982) (resident of public housing abducted, raped, assaulted, and murdered); *Kwaitkowski v. Superior Trading Co.*, 123 Cal. App. 3d 324, 326-27, 176 Cal. Rptr. 494 (1981) (tenant raped, assaulted, and robbed in foyer of apartment building); *Skaria v. State*, 110 Misc. 2d 711, 442 N.Y.S.2d 838 (Ct. Cl. 1981) (tenant raped and robbed in apartment building); *O'Hara v. Western Seven Trees Corp.*, 75 Cal. App. 3d 798, 802-04, 142 Cal. Rptr. 487 (1977) (tenant raped in apartment unit); and 43 A.L.R.5TH 207 § 4(a)-(c) (discussing cases in which courts have held that a landlord has duty to protect tenant against reasonably foreseeable criminal acts of third parties).

[13]*Walls v. Oxford Management Co.*, 137 N.H. 653, 633 A.2d 103 (1993) (holding that the landlord-tenant relationship is not a "special relationship," but not-

564

Of those courts that have imposed a duty on the landlord, some have done so on the basis of determining that there was a special relationship between the landlord and the tenant.[14] This principle is expressed in the RESTATEMENT (SECOND) OF TORTS § 315 (1965):

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

Washington expressly adopted section 315 of the RESTATEMENT in *Petersen v. State*.[15] Noting its earlier adoption of this RESTATEMENT provision, our Supreme Court recently held in *Nivens* that a special relationship exists between a business and its invitee that gives rise to a duty of the business to protect the invitee against foreseeable criminal

ing the contrary holding in *Kline*); *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. 158, 829 P.2d 512 (1992) (refusing to recognize a "special relationship" between landlord and tenant of an office building); *Cooke v. Allstate Management Corp.*, 741 F. Supp. 1205 (D.S.C. 1990) (refusing to recognize the landlord-tenant relationship as a "special relationship" giving rise to a duty to protect); *Faheen v. City Parking Corp.*, 734 S.W.2d 270 (Mo. Ct. App. 1987) (holding that the landlord owed the tenant no duty of protection under the "special relationship" exception); *Morgan v. Dalton Management Co.*, 117 Ill. App. 3d 815, 454 N.E.2d 57, 73 Ill. Dec. 313 (1983) (landlord not liable because the tenant's injury was not causally related to physical defects on the premises, the attack was not reasonably foreseeable, and the landlord had not engaged in an affirmative undertaking to protect its tenants); *King v. Ilikai Properties, Inc.*, 2 Haw. App. 359, 632 P.2d 657 (1981) (landlord not liable for tenant's injuries resulting from attack and robbery); and 43 A.L.R.5TH 207, § 3 (discussing cases in which courts held there is no "special relationship" between landlord and tenant).

[14]*See* B.A. Glesner, *Landlords as Cops: Tort, Nuisance & Forfeiture Standards Imposing Liability on Landlords for Crime on the Premises*, 42 CASE W. RES. L. REV. 679, 703 (1992) (citing, among other cases, *Kline*, 439 F.2d 477 and *O'Hara*, 75 Cal. App. 3d 798, for the proposition that "an increasing minority of jurisdictions are now moving toward recognition of the residential landlord-tenant relationship as one which is categorically analogous to the innkeeper-guest relationship"). *But see Doe*, 73 Haw. at 162-68 (rejecting the RESTATEMENT (SECOND) OF TORTS as a basis of liability).

[15]100 Wn.2d 421, 671 P.2d 230 (1983).

acts of third persons.[16] Other special relationships that Washington courts have said give rise to a duty to prevent intentional harm by third parties are school-student, common carrier-passenger, innkeeper-guest, employer-employee, and hospital- or nursing home-patient.[17] The usual rationale for imposing liability in these cases is that, by nature of the "special relationship," one party is entrusted with the well-being of another.[18]

In *Gurren v. Casperson*,[19] our Supreme Court considered the "duty which a landlord of a hotel owes to his guests." There, Winifred Gurren, a hotel guest, returned to her hotel room late one night. Shortly thereafter, defendant Sullivan, another guest at the hotel, entered Gurren's room. He was intoxicated and refused to leave in response to her demand. She immediately called the front desk, and the hotel sent someone up who ejected Sullivan from Gurren's room. After Sullivan was gone, Gurren again called the front desk and requested that he be kept away from her room. A short time later, she unlocked her door and started to cross the corridor. Sullivan assaulted her, knocking her down, cutting her face, and beating her until she was unconscious.

Gurren sued Sullivan and the hotel. In holding that the hotel had a duty to protect her from the assault, the court stated:

> Here, we have a guest in a hotel assaulted by another guest, after the landlord had been expressly warned of the *possibility* of this happening, and after the assaulted guest had demanded

---

[16]*Nivens*, 133 Wn.2d at 200-03.

[17]*McLeod v. Grant County Sch. Dist. No. 128*, 42 Wn.2d 316, 319-20, 255 P.2d 360 (1953) (school-student relationship); *Zorotovich v. Washington Toll Bridge Auth.*, 80 Wn.2d 106, 108, 491 P.2d 1295 (1971) (common carrier-passenger); *Miller v. Staton*, 58 Wn.2d 879, 365 P.2d 333 (1961) (innkeeper-guest); *Bartlett v. Hantover*, 9 Wn. App. 614, 621, 513 P.2d 844 (1973) (employer-employee), *reversed on other grounds*, 84 Wn.2d 426, 526 P.2d 1217 (1974); and *Shepard v. Mielke*, 75 Wn. App. 201, 205, 877 P.2d 220 (1994) (nursing home-patient).

[18]*See Nivens*, 133 Wn.2d at 201-02 (noting the entrustment aspect of the line of cases imposing liability in special relationship situations).

[19]147 Wash. 257, 258, 265 P. 472 (1928).

from the clerk of the hotel protection against the acts of the wrongdoer.

Under circumstances such as are disclosed by this record, the plaintiff is entitled to recover.[20]

In reaching its decision, our Supreme Court looked to the innkeeper-guest cases to set the standard for the duty owed by the landlord of the hotel to its guest.[21] As in those cases, liability in *Gurren* arose from the hotel's failure to protect its invitee from foreseeable criminal conduct by a third party on the premises of the hotel.

Citing *Gurren*, the United States Court of Appeals for the District of Columbia Circuit in the seminal *Kline* decision stated:

Liability in the innkeeper-guest relationship is based as a matter of law . . . upon the innkeeper's supervision, care, or control of the premises . . . .[22]

And our Supreme Court, also citing *Gurren*, observed in *Miller v. Staton* that an innkeeper owes a duty to his guests to exercise reasonable care to protect them from injury at the hands of fellow guests.[23] Most recently, in *Nivens*, our Supreme Court cited both *Gurren* and *Miller* in its discussion of Washington authority addressing the special relationships that give rise to a duty of protection against the wrongful acts of third persons.[24]

There is no principled distinction between the duty owed by the hotel owner to its guest in the *Gurren* case, the innkeeper to its guest in *Miller*, and the landlord to its tenant in this case. A special relationship giving rise to a duty to protect against the foreseeable criminal acts of third persons exists in each instance.

---

[20]*Gurren*, 147 Wash. at 259 (emphasis added).

[21]*Id.* at 258-59.

[22]439 F.2d at 482.

[23]58 Wn.2d 879, 883, 365 P.2d 333 (1961).

[24]*Nivens*, 133 Wn.2d at 201.

Implicit in our Supreme Court's holding in *Gurren* is the recognition of an innkeeper's heightened duty under the common law to protect its guests from the criminal actions of third persons on the premises. Whether the duty arises from the innkeeper's "supervision, care, or control of the premises," as stated in *Kline*, or from the innkeeper's presumed superior economic ability to take precautions for the safety of its guests, a duty exists.[25]

Likewise, there is a business-invitee relationship between the owner of the inn and its guest. The hotel conducts a business and invites members of the public to its premises for business purposes. Thus, it is unnecessary under the facts of this case for us to extend the common law duty applicable to innkeepers and guests to landlords and tenants to determine that the landlord owes the tenant a duty. Rather, the existence of a business-invitee relationship in which the invitee entrusts herself in some way to the business owner is sufficient.

The residential landlord of an urban apartment building retains control over common areas. Thus, the tenant looks to the landlord to address safety and other issues that arise in the common areas of the leased premises. In this sense, the tenant entrusts the landlord to address those issues. And it is this entrustment aspect of the relationship between landlord and tenant, not the mere existence of that relationship, that creates the special relationship between the two giving rise to a duty of the landlord to protect the tenant against criminal actions of third persons.[26]

This application of the common law to landlords and tenants is consistent with the holding in *Gurren*, a case strikingly similar in its facts to the assault on Griffin here. The landlord is not the insurer of the tenant's safety on the premises. But Griffin was a foreseeable victim of criminal activity in this case and the landlord had notice of that activity. The opening to the attic that was left askew in the

---

[25]Irma W. Merrill, *Landlord Liability for Crimes Committed by Third Parties Against Tenants*, 38 VAND. L. REV. 431, 435 (1985).

[26]*See Nivens*, 133 Wn.2d at 201-02.

closet to Griffin's apartment, the dirt on the ironing board and on the floor outside the closet, and the unlocked entry door to the apartment all pointed to an intruder having been in Griffin's apartment. She promptly reported these facts to Trammell Crow and asked it to address the problem before the attack occurred.

■ We note that the point of entry to Griffin's apartment was through the attic space over the apartment. Trammell Crow controlled that space, not Griffin. It was not part of the premises leased by the tenant.[27] The significance of this fact is that a landlord controls common areas and, consistent with common law principles, has a duty to maintain those common areas safely.[28] Notwithstanding Trammell Crow's argument to the contrary, we have found no case that limits common areas to areas open to the public at large for the purpose of determining when there is a duty to protect.[29]

Our holding is within the bounds of the law explicitly established by our Supreme Court in *Nivens* and recognized earlier in *Gurren*. A special relationship exists between a business and its invitee because an invitee "entrusts himself or herself to the control of the business owner over the premises and to the conduct of others on the premises."[30] There is no rational basis for relieving a landlord from a duty to its tenant to similarly protect against the arguably foreseeable criminal actions of third persons on

---

[27]The senior manager of the Heatherwood Apartments at the time of Griffin's attack testified by deposition that the attic was not considered a part of the tenant's apartment and was not an area within the tenant's control. Clerk's Papers at 982.

[28]*Amburgy v. Golden*, 16 Wn. App. 449, 450-51, 557 P.2d 9 (1976).

[29]*See* RESTATEMENT (SECOND) OF PROPERTY: LANDLORD AND TENANT § 17.3 (1977), which states:

"A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control . . . ."

[30]*Nivens*, 133 Wn.2d at 202.

the premises that the landlord controls. In fact, case authority in Washington already suggests the existence of a business-invitee relationship of the type here for the purpose of giving rise to a duty of a landowner in tort.[31]

While we base our holding today on the law of torts, our approach is consistent with the RESTATEMENT (SECOND) OF PROPERTY, *supra*. Section 17.3, Parts of Leased Property Retained in Landlord's Control Which Tenant is Entitled to Use, states:

> A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a *dangerous condition* upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have:

> (1) discovered the condition and the unreasonable risk involved therein; and

> (2) made the condition safe.

> **Comment:**

> *a. Landlord's retained control.* The rule stated in this section applies not only to the hall, stairs, elevators and other approaches to the part of the property leased to the tenant as an apartment, office, or room in a tenement or boarding house, but also to such other parts of the leased property to the use of which by the express or implied terms of the lease the tenant is entitled, usually in common with other tenants, such as a bathroom in a boarding house and the roof or yard of a tenement building or apartment house. . . .

> *l. Criminal intrusion.* For the purpose of this section, the

---

[31]*See Johnson v. State*, 77 Wn. App. 934, 941, 894 P.2d 1366 (holding that the relationship of a state university to a student, who was attacked while entering her dormitory, was sufficiently analogous to that of a business to its invitee so as to impose on the university an equivalent duty of care), *review denied*, 127 Wn.2d 1020 (1995); *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49, 914 P.2d 728 (1996) (the Supreme Court accepted, without comment, the parties' stipulation that a tenant of a mobile home park was a business invitee for purposes of a negligence action by the tenant against the landlord-owner).

unreasonable risk of harm from criminal intrusion constitutes a dangerous condition, so that where the landlord could by the exercise of reasonable care have discovered the unreasonable risk of criminal intrusion and could have made the condition safe from such unreasonable risk of criminal intrusion, he is subject to liability for physical harm caused by criminal intrusion if he has not taken the necessary precautions. . . .

Here, we recognize that a residential landlord has a duty to protect its tenant against foreseeable criminal acts of third parties. As in *Nivens*, this duty is the same as that of a business to its invitee. Thus, we adopt here RESTATEMENT (SECOND) OF TORTS § 344 (1965) to delimit the landlord's duty in such circumstances:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

In sum, we hold that the special relationship between landlord and tenant in a residential setting is the same as that special relationship between a business and its invitee. The special relationship arises because the tenant entrusts to the landlord the responsibility to deal with issues that arise from the landlord's control of the common areas of the premises. Because of that special relationship, the residential landlord owes its tenant a duty to protect the tenant from foreseeable criminal conduct of third persons on the premises. The landlord has the affirmative duty to take reasonable steps to protect the tenant from such conduct to satisfy its duty. The trial court erred by failing to instruct the jury on the proper duty of the landlord.

Having determined the proper duty of the landlord to its

tenant, the next question that we must address is whether the instructional error here was prejudicial.[32] We hold that it was.

■ Trammell Crow raises a preliminary issue that we must address. Citing *Stewart v. State*,[33] Trammell Crow claims that Griffin did not preserve below any error based upon the theoretical effect that the erroneous instruction would have on the jury's consideration of proximate causation. We reject this argument.

In *Stewart*, the plaintiff took exception to certain instructions at trial. The exceptions were general in nature and no theory or authority was cited to the court, as required by the rules.[34] Predictably, the Supreme Court held on appeal that the appellant had failed to adequately apprise the trial court of the nature of the objection and the authority supporting the objection. That is not the case here.

Griffin clearly articulated the basis for her objection to the court's instruction and the judge's refusal to give Griffin's proposed duty instruction. Griffin cited the authority in support of her theory of the case, as required by the rules. Counsel and the trial court had extensive colloquy on the instructions. In our review of this record, it is absolutely clear that the trial court fully understood the nature of Griffin's arguments, had read the cases cited by her in support of those arguments, and decided to reject her proposed instruction and give its own instruction after giving careful consideration to her proposal.

*Stewart* does not require that Griffin predict the exact way in which she would be prejudiced by the court's decision not to instruct the jury as she requested. She apprised the court of her objection and cited the authorities supporting her argument. That is all that is required to preserve the point for appeal.

---

[32]*Stiley v. Block*, 130 Wn.2d 486, 498-99, 925 P.2d 194 (1996) ("Trial court error on jury instructions is not a ground for reversal unless it is prejudicial.").

[33]92 Wn.2d 285, 597 P.2d 101 (1979).

[34]*Stewart*, 92 Wn.2d at 298.

■ We move to the substantive analysis of how the refusal to give Griffin's proposed instruction was prejudicial. First, the instruction gave the jury the wrong standard for the duty Trammell Crow owed to Griffin. Thus, we reverse as a matter of law.[35] Second, the jury found that Trammell Crow was negligent under the standard given but also found there was no proximate cause between the negligence and the injuries that Griffin sustained. This is a second basis for reversal.

In *Schooley*, our Supreme Court held that duty and proximate cause are intertwined.[36] The court explained that some of the policy considerations in determining whether a duty exists are also relevant in determining whether the breach of that duty was the legal, or proximate, cause of the injury.[37] Because they are intertwined, we cannot be certain that the jury properly determined proximate cause when it was improperly instructed on the applicable duty. We can be assured of this only when the jury is properly instructed in a new trial.

We decide in this opinion only the question of duty. On remand, Griffin must establish to the satisfaction of the trier of fact the other elements of her negligence claim against Trammell Crow: breach, proximate cause,[38] and damages.

We reverse the judgment and remand for trial.

The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.[39]

---

[35] *Stewart*, 92 Wn.2d at 292.

[36] *Schooley*, 134 Wn.2d at 479.

[37] *Id.*

[38] *See* Madeline Johnson, *Landlord's Responsibility for Crime: Determining Legal Causation*, 17 REAL EST. L.J. 234 (1989).

[39] RCW 2.06.040.

ELLINGTON and APPELWICK, JJ., concur.

Review granted at 140 Wn.2d 1017 (2000).