92 P.3d 1010

**Jane DOE, Plaintiff–Appellant,**

v.

**GROSVENOR CENTER ASSOCIATES, a Hawai'i Partnership; Grosvenor International (Hawaii) Ltd., a Hawai'i corporation, GRC Properties, Inc., a Delaware corporation, and Safeguard Services, Inc., a Hawai'i corporation, Defendants–Appellees.**

**No. 25195.**

Intermediate Court of Appeals of Hawai'i.

April 29, 2004.

Leslie S. Fukumoto, Honolulu, on the briefs, for Plaintiff–Appellant.

David M. Louie, April Luria, and Jodie D. Roeca (Roeca, Louie & Hiraoka), Honolulu, on the briefs, for Defendants–Appellees Grosvenor Center Associates and Grosvenor International (Hawaii) Ltd.

Robert P. Richards, Michele–Lynn E. Luke, and Deborah S. Jackson (Richards & Luke), Honolulu, on the briefs, for Defendant–Appellee Safeguard Services, Inc.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Jane Doe (Plaintiff or Jane Doe) appeals from the June 6, 2002 Final Judgment entered in the Circuit Court of the First Circuit by Judge Eden Elizabeth Hifo. We affirm.

Jane Doe, a sublessee of one office within a lessee's suite of seven offices in an owner-lessor's office building, was in her office one Saturday afternoon when she was robbed and raped by an unidentified man. Jane Doe sued.

In addition to the named defendants, Jane Doe also directed her Complaint against unidentified "persons or entities responsible for the construction, managing, owning, designing, operating, controlling, maintaining or repairing of the building known as the GROSVENOR CENTER and/or where in some manner presently unknown to [her] and/or conducted some activity in a negligent or dangerous manner which negligent or dangerous conduct was a proximate cause of the injuries or damages to [her][.]" Jane Doe, however, never identified any such defendant.

In Count I, Jane Doe sought monetary damages from the unidentified alleged rapist. Count I failed because the alleged rapist never was identified.

In Count II, she alleged the negligence of, and sought monetary damages from, the owner-lessor and the manager of the building, lost this part of Count II by summary judgment. In this appeal, she challenges this summary judgment.

In Count II, she also alleged the negligence of, and sought monetary damages from, the corporation hired to provide security for the building. Jane Doe lost this part of Count II by jury verdict. In this appeal, she asserts two points of error regarding this jury trial.

In Count III, she sought monetary damages allegedly caused by a breach of an implied warranty of fitness and habitability by (a) the owner-lessor and the manager of the building and (b) the corporation hired to provide security for the building. By summary judgment, Jane Doe lost the part of Count III that was against the owner-lessor

and the manager of the building. In this appeal, she challenges this summary judgment. By directed verdict, Jane Doe lost that part of Count III that was against the corporation hired to provide security for the building. In this appeal, she challenges this directed verdict.

In Count IV, Jane Doe unsuccessfully sought punitive/exemplary damages from all defendants.

## BACKGROUND

Defendant–Appellee Grosvenor International (Hawaii) Ltd. (Grosvenor International) and/or Defendant–Appellee Grosvenor Center Associates (Grosvenor Associates) (collectively, the Grosvenor Defendants) leased Suite 1200 of the Grosvenor Center to a partnership (Lessee Partnership).

Jane Doe testified at trial, in relevant part, as follows: [1]

Q. And what is your age at the present time?

A. 64.

. . . .

Q: [D]id you ever occupy offices at the Grosvenor Center?

A: After Bishop Baldwin went into bankruptcy, I moved to suite 1200.

Q. Of what tower?

A. Makai tower.

. . . .

Q: ... Was this your own office or were you subleasing from someone else?

A: I was subleasing from [Lessee Partnership].

. . . .

Q: I'm going to ask you now and take you back to November 20th, 1993, okay? That day, what do you remember about— what's the first thing you remember about that day?

A: I came back from [overseas].

. . . .

Q: What time did you arrive back from [overseas]?

. . . .

Q. About 5:30 a.m.

A. Yes.

Q. What did you do after you arrived from [overseas]?

A: I dashed home, ..., dropped my suitcase, changed clothes, and came to work.

Q. About what time did you arrive at work that day?

A: Probably 7:30.

Q: ... [O]h, by the way, that day it was a Saturday, correct?

A: Yes.

. . . .

Q: When you came to the office that day at 7:30, was anybody else present?

A: No.

. . . .

. . . .

Q: At some point in time did anybody else from the [Lessee's] office enter into the office?

A: My office?

Q: No, just that—the Suite 1200. When I say [Lessee's] office, I mean the Suite 1200, not necessarily your interior office.

A: I heard [Lessee Partner] came in.

. . . .

Q: What, if anything, did you talk about?

A: He told me that water in the building would be shut off at 2:00 p.m.

. . . .

Q: Okay. What was your response, if anything, to that comment by [Lessee Partner]?

A: I told him I better go to [the] bathroom. First of all, I look [sic] at my watch. It was, I believe, 2:15, somewhere around that. I told him I want to—I better go to [the] bathroom and there must be enough water in the pipe system.

Q: What next did you do?

---

1. Because the events that occurred have been similarly described by Plaintiff-Appellant Jane Doe (Jane Doe) in both her pre-trial deposition testimony and her trial testimony, this court will cite to only the trial testimony.

A: I went to [the] bathroom.

Q: While you left the office and used the bathroom, did you notice anybody else on the floor?

A: No.

Q: Did you notice anybody else in the office working?

A: No.

Q: After—I assume you came back from the bathroom and went back into your office?

A: Yes.

Q: Okay. Was the front door locked or open?

A: It was locked.

Q: What did you do after you returned to the office?

A: After I walked into Suite 1200 I jiggled the lock to make certain it was locked.

Q: Okay. Then after that what did you do?

A: Went back to my office.

. . . .

Q: Was [Lessee Partner] still in the office at that time?

A: Yes, he was.

Q: Was he in the general office space or was he in his own office?

A: His office.

. . . .

Q: At some point did you notice [Lessee Partner] leaving the office?

A: Yes, I did.

. . . .

Q: Did you talk to [Lessee Partner] before he left—immediately before he left or did you just notice him leaving?

A: I did not talk to him. I heard him leaving, closing the door.

. . . .

Q: Okay. What next do you recall happening?

A: I was working very, very hard, constantly looking at the—my watch because I promised to mail the package that day and Ala Moana post office was closing at 4:30. So I kept looking at my watch.

. . . .

Q: So what were you doing after you looked at your watch and thought to yourself I only have an hour left?

A: Just glued to the computer screen and concentrating on my letter.

Q: Okay. What next do you recall happening?

A: The—I sense somebody walking—walk into my office.

Q: When you say sense somebody, can you explain to us how that was? Was it just a feeling or did you hear something or notice anything?

A: No, that was feeling.

Q: What next happened?

A: I looked up. And I noticed a man, I would say, like dark or walking fast, covered with like turban, the small cone-shaped turban and like dome—like this and cover—like a dome, covered, and two holes.

. . . .

Q: What next do you recall happening?

A: He was pointing a knife at me and he yelled very loudly, said, "If you see my face, I'll kill you."

Jane Doe then described the robbery and the rape.

On November 15, 1995, Jane Doe filed a Complaint against Grosvenor International, Defendant–Appellee Safeguard Services, Inc. (Safeguard), and various Does. On January 25, 1996, Jane Doe filed a First Amended Complaint against Grosvenor International, Safeguard, Grosvenor Associates, Defendant–Appellee GRC Properties, Inc.,[2] and various Does.

Count I sought monetary damages from the person who allegedly "without just cause or provocation or consent, unlawfully, maliciously, and/or violently sexually assaulted, struck, beat, attacked, robbed, and bruised"

**2.** On February 17, 1998, after a hearing on January 8, 1998, Judge Kevin S.C. Chang entered an Order Granting Defendant GRC Properties, Inc.'s Motion for Summary Judgment Filed on December 4, 1997. This order noted that, after 1990, Defendant–Appellee GRC Properties, Inc., did not have any interest in the relevant premises.

Jane Doe. Count II sought from the Grosvenor Defendants and Safeguard monetary damages allegedly caused by their negligence. Count III sought from the Grosvenor Defendants and Safeguard monetary damages allegedly caused by their breach of implied warranties of fitness and habitability. Count IV sought punitive/exemplary damages from all defendants.

On August 13, 1996, Grosvenor Defendants filed (a) an answer admitting "that at all relevant times [Grosvenor Associates] owned portions of Grosvenor Center and Defendant Safeguard was under contract to [Grosvenor Associates] to provide security services" and (b) a cross-claim against Safeguard.

On December 29, 1997, the Grosvenor Defendants filed a motion for summary judgment. On January 9, 1998, Safeguard filed a Motion for Summary Judgment, Or in the Alternative, Motion for Partial Summary Judgment Re: Punitive Damages. On February 2, 1998, Judge Kevin S.C. Chang held a hearing on these motions and then took the matters under advisement.

A document dated February 3, 1998, and attached to the inside of the back cover page of volume 5 of the circuit court record, states in relevant part as follows: [3]

> MINUTE ORDER (2/9/98):
>
> VIEWING THE EVIDENCE AND INFERENCES IN THE LIGHT MOST FAVORABLE TO PLTFF, THE COURT FINDS THAT THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AND THAT DEFTS GROSVENOR CENTER ASSOCIATES AND GROSVENOR INTERNATIONAL (HAWAII) ("DEFTS") ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW....
>
> . . . .
>
> THUS, THE COURT FINDS THAT DEFTS DID NOT HAVE A DUTY TO PROTECT PLTFF FROM CRIMINAL ACTS OF THIRD PERSONS BECAUSE NO "SPECIAL RELATIONSHIP" EX-
> ISTED BETWEEN DEFTS AND THE PLTFF IN THIS ACTION.
>
> . . . .
>
> ... PLTFF HAS FAILED TO PRESENT ADMISSIBLE COMPETENT EVIDENCE WHICH ESTABLISHES THE BASIS FOR THE IMPOSITION OF A DUTY TO PROTECT ON THE DEFTS OR THE EXISTENCE OF AN IMPLIED WARRANTY OF HABITABILITY IN THE COMMERCIAL LANDLORD–TENANT SETTING.
>
> . . . .
>
> IN AN ABUNDANCE OF CAUTION, THE COURT GRANTS PLTFF'S REQUEST FOR A CONTINUANCE PURSUANT TO HRCP 56(F). IN PERTINENT PART, THE EVIDENCE PRESENTED ESTABLISHES THAT PLTFF TIMELY NOTICED THE DEPOSITION OF ALBERT DENNIS TO OCCUR BEFORE THE DISCOVERY CUT–OFF AND THAT THE DEPOSITION DID NOT OCCUR BECAUSE PLTFF'S COUNSEL ATTEMPTED TO ACCOMMODATE THE AVAILABILITY OF THE DEPONENT.
>
> THEREFORE, DEFTS SAFEGUARD SERVICES, INC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT RE PUNITIVE DAMAGES FILED 1/9/98, IS DENIED WITHOUT PREJUDICE. UPON COMPLETION OF THE DISCOVERY REFERRED TO BY PLTFF'S COUNSEL IN HIS AFFIDAVIT, DEFT SAFEGUARD MAY SEEK LEAVE OF THE COURT TO FILE ITS MOTION FOR SUMMARY JUDGMENT LESS THAN 50 DAYS PRIOR TO TRIAL.
>
> . . . .
>
> NOTE: COUNSEL WERE PROVIDED A COPY OF THIS MINUTE ORDER VIA THEIR RESPECTIVE COURT

---

[3]. This court has noted "that documents, such as clerk minutes and letters to and from the court, that are in, attached to, or appended to the lower court record but which have not been 'filed' in the lower court record as evidenced by the court clerk's file stamp, are not a part of the record on appeal. HRAP [Hawaii Rules of Appellate Procedure] Rule 10(a). In other words, for purposes of the appeal, these documents do not exist and may not be cited as if they exist. HRAP Rule 28(b)." *Webb v. Harvey,* 103 Hawai'i 63, 66, 79 P.3d 681, 684 (Hawai'i.Ct.App.2003).

JACKETS. PREVAILING PARTIES TO PREPARE RESPECTIVE ORDERS. BY ORDER OF THE COURT *M. Anguay* CLERK

At a hearing on February 26, 1998, Judge Chang orally denied Defendant Safeguard Services, Inc.'s Motion for Reconsideration Re: Order Denying Defendant Safeguard Services, Inc.'s Motion for Summary Judgment Filed 1/9/98 that had been filed on February 20, 1998. The reason stated for the denial was "because the defendants have failed to establish adequate legal and factual grounds warranting reconsideration of the order denying Safeguard's motion for summary judgment in this case."

Jane Doe's claims in Count II, Count III, and Count IV against the Grosvenor Defendants were resolved against Jane Doe by Judge Chang's March 5, 1998 Order Granting Defendants Grosvenor Center Associates and Grosvenor International (Hawaii) Ltd's Motion for Summary Judgment Filed on December 29, 1997 (March 5, 1998 SJ). This March 5, 1998 SJ states, in relevant part, as follows:

1. A prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff. *Cuba v. Fernandez*, 71 Haw. 627, 631 [801 P.2d 1208] (1990).

2. Generally, courts have been reluctant to impose a duty on owners and occupiers of land to protect others against the criminal acts of third persons. *Doe v. Grosvenor*, 73 Haw. 158, 162 [829 P.2d 512] (1992). Exceptions to the general rule may arise, when justified by the existence of some "special relationship" between the parties. *Id.; Maguire v. Hilton Hotels Corp.*, 79 Hawai'i 110, 113 [899 P.2d 393] (1995), citing Section 314A of the Restatement (Second) of Torts.

3. At the time of the subject incident, Plaintiff was a tenant or lessee in a commercial landlord-tenant relationship. In this case, Plaintiff was not a business invitee. Additionally, the subject incident did not take place in a common area controlled by the landowner or property management company but occurred in Plaintiff's leased premises. Thus, Grosvenor Defendants did not have a duty to protect Plaintiff from criminal acts of third persons because no "special relationship" existed between Grosvenor Defendants and the Plaintiff in this action.

4. Since Grosvenor Defendants sustained their burden of production, Plaintiff had the burden of responding to the Motion and demonstrating specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. *GECC Financial Corp. v. Jaffairan [Jaffarian]*, 79 Hawai'i 516, 521 [904 P.2d 530] (1995). Plaintiff failed to present admissible, competent evidence which establishes the basis for the imposition of a duty to protect on the part of the Grosvenor Defendants or the existence of an implied warranty of habitability in the commercial landlord-tenant relationship.

At a hearing on April 17, 1998, Judge Chang orally denied Defendant Safeguard Services, Inc.'s Motion for Summary Judgment that Safeguard had filed on March 16, 1998.[4]

4. The following discussion occurred at the hearing on Defendant–Appellee Safeguard Services, Inc.'s (Safeguard's) motion for summary judgment:

THE COURT: If at the time of the original motion ... you asked for a Rule 56 continuance—

[COUNSEL FOR JANE DOE]: Correct.

THE COURT:—to depose the Safeguard individuals, suggesting that there would be evidence determined as a result of that discovery which would affect the motion for summary judgment, that was not made with regards to Grosvenor. I ruled on Grosvenor, finding that there was no duty between Grosvenor and the plaintiff, based on the non-existence of a special relationship. Now, you're basically saying, if the Court was right with regards to Grosvenor, then the same ruling should apply to Safeguard.

[COUNSEL FOR JANE DOE]: That's correct.

THE COURT: And I'm saying, well, then are you conceding the facts are the same with regards to Grosvenor and Safeguard with regards to the existence of a duty so that you waive first your request—your earlier request for 56(f)?

[COUNSEL FOR JANE DOE]: I specifically waive the request for 56(f),—

. . . .

On May 17, 1999, after a hearing on February 10, 1999, Judge Chang entered an Order Granting Defendant Safeguard Services, Inc.'s Motion to Sever Cross–Claim Filed on February 5, 1999. This motion was based on the argument that "a contractual claim based upon the alleged breach of the indemnity agreement, is separate and distinct from the main claim herein, namely, a tort claim based upon negligence theories[.]"

Judge Colleen K. Hirai presided over an eight-day jury trial that began on March 9, 1999. On March 17, 1999, Safeguard filed a Motion in Limine to Preclude Reference to Any Claim of Breach of Implied Warranty of Habitability; or in the Alternative, Motion for Partial Directed Verdict. At a hearing on March 17, 1999, Judge Hirai orally ruled as follows:

> THE COURT: As to ... the motion in limine and the motion for partial directed verdict, the Court having reviewed the motion and having heard the arguments of counsel, viewing the evidence in the light most favorable to [Jane Doe], grants the motion in part and denies it in part. The motion for partial directed verdict is granted.
>
> As to [Jane Doe's] claim based upon an implied warranty of habitability and fitness, the Hawaii Supreme Court has not

extended a claim for breach of an implied warranty of habitability and fitness to a commercial landlord-tenant situation. The evidence presented at trial is that [Jane Doe] is a subtenant in a commercial office building. [Safeguard] contracted with [Grosvenor] to provide security for the building and is not the landowner. Consequently this cause of action cannot be maintained against [Safeguard] in this case. The motion in limine is denied.

On April 21, 1999, Judge Hirai entered an Order Granting in Part and Denying in Part Defendant Safeguard Services, Inc.'s Motion in Limine to Preclude Reference to Any Implied Warranty of Habitability; or in the Alternative, Motion for Partial Directed Verdict Filed on March 17, 1999, as follows:

> 1. The Motion in Limine to Preclude Reference to Any Claim of Breach of Implied Warranty of Habitability is hereby DENIED; and
>
> 2. The Motion for Partial Directed Verdict be and hereby is GRANTED and a directed verdict shall be entered in favor of Defendant Safeguard Services, Inc. and against Plaintiff on any and all claims made in Count III of Plaintiff's First Amended Complaint filed on January 25, 1996.[5]

> THE COURT: And now you're saying then that, for purposes of this motion, you concede that Grosvenor and Safeguard stand in the same shoes?
>
> [COUNSEL FOR JANE DOE]: [F]or purposes of this motion, Your Honor, it appears that based upon—I don't—I don't know how to say this, other than the fact that I disagree with the Court ruling. But based upon the Court's previous ruling and the factual evidence, that, yes, I think they stand in the same shoes as in terms of the duty issue.
>
> [THE COURT]: Well—
>
> [COUNSEL FOR JANE DOE]: I mean, if the Court—I mean, obviously, if the Court found a duty, then I can't concede that there was no duty.
>
> ....
>
> THE COURT: What you're saying or suggesting that basically the law of the case doctrine should apply; is that right?
>
> [COUNSEL FOR JANE DOE]: Correct.
>
> THE COURT: And so for the law of the case doctrine to apply, then you're conceding that for factual purposes on this Rule 56 motion that Grosvenor and Doe—I'm sorry, Grosvenor and Safeguard stand in the same shoes.

> [COUNSEL FOR JANE DOE]: Basically, yes, that's my understanding.
>
> THE COURT: Basically yes or yes? For purposes of the record on appeal.
>
> [COUNSEL FOR JANE DOE]: For purposes of the record on appeal, yes.
>
> ....
>
> THE COURT: This motion's denied. Denied without prejudice.

5. Count III of Jane Doe's First Amended Complaint filed on January 25, 1996 stated as follows:

> 16. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 15, above.
>
> 17. Defendants implied [sic] warranted that Grosvenor Center was fit and habitable for the purposes of a commercial office building.
>
> 18. Plaintiff, in reliance upon such warranty and on the skill, reputation and judgment of Defendants, entered the aforesaid premises on the aforesaid date.
>
> 19. The premises was not habitable nor fit for the purposes intended but was unsafe and dangerous to life and limb.
>
> 20. Plaintiff did not know, nor did she have any reasonable means of knowing at the times

The court instructed the jury, in relevant part, as follows:

The elements of a claim for negligence are:

One, the defendant owed a duty to the plaintiff of reasonable care against a foreseeable risk of injury;

Two, the defendant breached such a duty by failing to exercise reasonable care; and

Three, the defendant's breach of duty was a legal cause of plaintiff's injury.

Negligence is the doing of some act which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under the circumstances shown by the evidence. It is the failure to use ordinary care.

. . . .

To establish that defendant owed a duty to plaintiff, plaintiff must prove by a preponderance of the evidence that defendant voluntarily undertook a duty of reasonable care to protect her against criminal harm.

One who undertakes gratuitously or for consideration to render service to another which he should recognize as necessary for the protection of third person or his things is subject to liability to the third person resulting from his failure to exercise reasonable care to protect his undertaking if:

A, his failure to exercise reasonable care increases the risk of harm; or

B, he has undertaken to perform a duty owed by the other to the third person; or

C, the harm is suffered because of reliance of the other or the third person upon the undertaking.

Even if you find that defendant had voluntarily undertaken a duty of reasonable care, it is not an insurer for protection against crime. The fact that a crime has occurred does not mean that defendant did not exercise reasonable care.

alleged herein, that the premises was not habitable nor fit for the purposes intended but was unsafe and dangerous to life and limb.

21. As a direct and proximate result therefrom, Plaintiff was caused to be assaulted and robbed as described aforesaid, causing said

On a Special Verdict Form, the jury answered "No" to the question, "Was Defendant Safeguard Services, Inc. ( . . . ) negligent?" On April 28, 1999, Judge Hirai entered a Judgment, which stated in relevant part, as follows:

1. JUDGMENT be and hereby is ENTERED in favor of Defendant SAFEGUARD SERVICES, INC. and against Plaintiff Jane Doe;

. . . .

Costs shall be taxed in favor of Defendant SAFEGUARD SERVICES, INC. and against said Plaintiff as permitted by law.

. . . .

Remaining herein is the Cross–Claim asserted by Defendants GROSVENOR CENTER ASSOCIATES and GROSVENOR INTERNATIONAL (HAWAII) LTD. against Defendant SAFEGUARD SERVICES, INC. filed on August 8, 1996. Said Cross–Claim was severed from the underlying claim pursuant to the Court's ruling granting Defendant SAFEGUARD SERVICES, INC.'S motion for severance filed on February 5, 1999.

On May 6, 1999, Doe appealed from the April 28, 1999 Judgment in favor of Safeguard and commenced appeal no. 22488. On October 1, 1999, the Hawai'i Supreme Court entered an order dismissing this appeal because Doe failed to file an opening brief.

On March 21, 2001, after a hearing on February 20, 2001, Judge Hifo entered an Order Granting Defendants Grosvenor Center Associates and Grosvenor International (Hawaii) Ltd.'s Motion to Dismiss Cross–Claim of Defendants Grosvenor Center Associates and Grosvenor International (Hawaii) Ltd. Filed August 13, 1996 Against Safeguard Services, Inc. (Filed on January 4, 2001).

On August 31, 2001, in no. 24518, Jane Doe filed, in the Hawai'i Supreme Court, a Petition for Writ of Mandamus directing Judge

Plaintiff to sustain severe and substantial personal injuries. . . .

22. That as a further direct and proximate result of Defendant's conduct aforesaid, [Jane Doe] was unable to work, . . . .

Hifo to enter "a Final Judgment in the case[.]"

On September 25, 2001, after a hearing on September 4, 2001, Judge Hifo entered an Order Granting Defendant Safeguard Services, Inc.'s. Motion for Entry of Order Granting Taxation of Costs, Filed August 3, 2001. Based on this order, Judge Hifo entered an October 24, 2001 Judgment ordering Jane Doe to reimburse Safeguard the $10,532.14 it had spent in costs. On November 23, 2001, Doe appealed this judgment and the result was appeal no. 24709.

On April 8, 2002, in response to Jane Doe's August 31, 2001 Petition for Writ of Mandamus, the Hawai'i Supreme Court entered an order stating, in relevant part, as follows:

> [I]t appears that: ... (2) the circuit court refused to enter a judgment because [Jane Doe] filed an earlier appeal, docketed as Appeal No. 22488, that was dismissed; (3) this court takes judicial notice of its own files and notes that there was no jurisdiction for the earlier appeal because there was an outstanding cross-claim and the circuit court did not certify the judgment being appealed as final pursuant to HRCP Rule 54(b); (4) inasmuch as the underlying case was not finally resolved until the circuit court entered an order dismissing the cross-claim on March 21, 2001, the circuit court should have granted [Jane Doe's] request for entry of a final judgment.... Therefore,
>
> IT IS HEREBY ORDERED that the petition for a writ of mandamus is granted. The circuit court shall forthwith enter a final judgment that complies with *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawai'i 115, 869 P.2d 1334 (1994).

On August 21, 2002, the parties stipulated to a dismissal of appeal no. 24709 "without prejudice".

On June 6, 2002, Judge Hifo entered a Final Judgment and this appeal no. 25195 followed.

### APPELLATE JURISDICTION

█ Safeguard contends that (1) the April 28, 1999 Judgment was the appealable final judgment that was validly and unsuccessfully appealed in appeal no. 22488 and (2) the June 6, 2002 Final Judgment pertained solely to the Grosvenor Defendants' cross-claims against Safeguard and Doe has no standing to appeal those cross-claims. The following two considerations cause us to disagree. First, in its April 8, 2002 Order, the Hawai'i Supreme Court concluded that the April 28, 1999 Judgment was not an appealable final judgment because the Grosvenor Defendants' cross-claims against Safeguard were not dismissed until March 21, 2001. Second, the basis for the May 17, 1999 Order Granting Defendant Safeguard Services, Inc.'s Motion to Sever Cross–Claim Filed on February 5, 1999, was HRCP Rule 42(b) (allowance of separate trials), and the May 17, 1999 order did not result in two independent actions permitting entry of two independent final judgments. Consequently, the June 6, 2002 Final Judgment was the final and appealable judgment that was validly appealed in this appeal.

### POINTS ON APPEAL

Jane Doe contends that reversible errors occurred:

(1) when Judge Chang entered the March 5, 1998 SJ in favor of the Grosvenor Defendants;

(2) when Judge Hirai entered the April 21, 1999 order directing a verdict in favor of Safeguard and against Jane Doe regarding Count III (the breach of implied warranty of fitness and habitability count) of the January 25, 1996 First Amended Complaint;

(3) when, notwithstanding the lack of any objection, Judge Hirai did nothing sua sponte when Robert R. Richards, the trial lawyer for Safeguard Services, allegedly asserted "not only his personal beliefs but his family" in his closing argument;

(4) to the following jury instructions:

[Safeguard's Proposed Jury Instruction No. 1]

> The elements of a claim for negligence are:
>
> One, the defendant owed a duty to the plaintiff of reasonable care against a foreseeable risk of injury;

. . . .

[Safeguard's Proposed Jury Instruction No. 8]

To establish that defendant owed a duty to plaintiff, plaintiff must prove by a preponderance of the evidence that defendant voluntarily undertook a duty of reasonable care to protect her against criminal harm.

Jane Doe objected as follows: [6]

[COUNSEL FOR JANE DOE]: Yes, Your Honor. We would object to this instruction [No. 1], especially to paragraph 1, which states a duty is a question.

Duty is a question of law for the Court to decide and is not one for the jury. By even giving the jury such an instruction, the Court is inviting the jury to decide a legal question. We therefore believe it is an incorrect statement of the law. It is misleading and should not be given.

. . . .

[COUNSEL FOR JANE DOE]: Yes, Your Honor. We believe this [No. 8] is an incorrect statement of the law as applied to this case. That the previous ruling [7] established that the defendant had a duty to protect plaintiff against criminal acts of third-parties, and it was not the voluntary undertaking ruling. And therefore, this is an incorrect statement of the law as applied to the facts and evidence in this case.

### STANDARDS OF REVIEW

#### 1. Motion for Summary Judgment

■ We review a circuit court's grant or denial of summary judgment *de novo* under the same standard applied by the circuit court. *Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (citation omitted); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144

(1992) (citation omitted). As the Hawai'i Supreme Court has often articulated, "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citations and internal quotation marks omitted). According to the supreme court, "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

When performing this review, "[w]e . . . view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion." *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997)(quoting *Maguire v. Hilton Hotels Corp.,* 79 Hawai'i 110, 112, 899 P.2d 393, 395 (1995)) (brackets omitted).

#### 2. Jury Instructions

■ " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane,* 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio,* 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)); *see also State v. Hoey,* 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

### DISCUSSION

#### 1.

■ Jane Doe challenges the March 5, 1998 Order Granting Defendants Grosvenor

A, his failure to exercise reasonable care increases the risk of harm; or

B, he has undertaken to perform a duty owed by the other to the third person; or

C, the harm is suffered because of reliance of the other or the third person upon the undertaking.

**6.** Over the same objection as Jane Doe previously had made to Safeguard's Proposed Jury Instruction No. 8, the court gave Safeguard's Proposed Jury Instruction No. 10, as follows:

One who undertakes gratuitously or for consideration to render service to another which he should recognize as necessary for the protection of third person or his things is, subject to liability to the third person resulting from his failure to exercise reasonable care to protect his undertaking if:

**7.** "[T]he previous ruling" referred to is not identified.

Center Associates and Grosvenor International (Hawaii) Ltd.'s Motion for Summary Judgment Filed on December 29, 1997. Jane Doe contends that she was a "business visitor" of Grosvenor and therefore a "special relationship" duty existed. We disagree.

The Hawai'i Supreme Court has defined the "business visitor" "special relationship" duty as follows:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons ... and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

. . . .

Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

*Doe v. Grosvenor Props. (Hawaii) Ltd.,* 73 Haw. 158, 165–66, 829 P.2d 512, 516 (1992) (quoting § 314A of the *Restatement (Second) of Torts* and comment f to § 344 of the *Restatement (Second) of Torts* ).

Once the existence of a special relationship is established, the determination of whether there is a duty turns upon whether the actions of the third party are reasonably foreseeable. *See Doe,* 73 Haw. at 168, 829 P.2d at 518. . . .

. . . .

. . . [W]e do not imply that plaintiffs are always *required* to demonstrate the existence of some prior similar criminal acts in order to show that the criminal act of a third party was reasonably foreseeable. Indeed, when determining the foreseeability of a particular criminal act committed by a third party, we look to the totality of circumstances. *See Doe v. Grosvenor Properties (Hawaii) Ltd.,* 73 Haw. 158, 829 P.2d 512 (1992); *see also Moody v. Cawdrey & Associates, Inc.,* 6 Haw.App. 355, 721 P.2d 708, *rev'd,* 68 Haw. 527, 721 P.2d 707 (1986).

In *Moody,* . . . [t]he ICA then discussed the issue of foreseeability in the context of third party criminal acts:

We find no logic in [the prior similar incidents rule] which allows an occupier of land one free assault before liability may be imposed. Evidence of prior similar incidents is not the *sine qua non* to a finding of foreseeability. While proof of prior similar incidents is probative of foreseeability, such proof is not the prerequisite, and its absence does not foreclose a finding of foreseeability. Rather, the touchstone of liability is foreseeability of criminal attack based on "the totality of the circumstances." Foreseeability must be analyzed in light of all the circumstances on a case by case approach.

*Moody,* 6 Haw.App. at 364–365, 721 P.2d at 715 (internal citations omitted).

Although this court subsequently reversed the ICA's decision in *Moody* based on a determination that no "special relationship" exists between landlords and tenants, the ICA's discussion regarding foreseeability remains compelling. . . .

Under the totality of circumstances test, prior criminal acts are still helpful, but the inquiry is broad enough to examine other

factors as well. *See* ...; *Holiday Inns, Inc. v. Shelburne,* 576 So.2d 322, 331 (Fla. App.1991) ("Foreseeability is determined in light of all the circumstances rather than by a rigid application of a mechanical 'prior similar [incidents]' rule. While evidence of prior similar incidents are helpful, a rule limiting evidence of foreseeability to prior similar incidents deprives the jury of its role in determining the question of foreseeability.") (citations omitted).

Applying the totality of the circumstances test does not mean that we are imposing strict liability on landowners to protect invitees against all actions by third parties. To the contrary, the totality of the circumstances rule simply means that our inquiry will not be unfairly limited. Foreseeability must still be determined reasonably. As the Mississippi Supreme Court has aptly noted:

> We doubt there exists a community in this State which is entirely crime-free. In the broadest sense, all crimes anywhere are "foreseeable." To impose a blanket duty on all merchants to afford protection to their patrons would be a result not intended by our courts and not condoned by public policy. Discharging such a duty would undoubtedly be inconvenient and expensive, and to impose a duty absent true foreseeability of criminal activity in a particular store would be grossly unfair.

*Crain v. Cleveland Lodge 1532,* 641 So.2d 1186, 1191 (Miss.1994) (quoting *Sawyer v. Carter,* 71 N.C.App. 556, 322 S.E.2d 813, 817 (1984)).

... Indeed, the issue of reasonable foreseeability is ordinarily subject to a determination by the trier of fact.... Therefore, because there was a genuine issue of material fact regarding the question of foreseeability, we vacate the order granting summary judgment in favor of Defendants.

*Maguire v. Hilton Hotels Corp.,* 79 Hawai'i at 116–17, 899 P.2d at 400 (footnotes omitted).

■ We summarize the precedent created by the Hawai'i Supreme Court's opinions in *Doe v. Grosvenor, Maguire v. Hilton Ho-*

*tels Corp.,* and *Moody v. Cawdrey & Associates, Inc.,* (68 Haw. 527, 721 P.2d 707 (1986), *rev'd* 6 Haw.App. 355, 721 P.2d 708), as follows: (1) a landlord that owns and operates an office building and leases and rents offices to tenants (a) never owes the "business visitor" "special relationship" duties to its tenants, but (b) owes the "business visitor" "special relationship" duties to its tenant's employee (i) while the tenant's employee is in the landlord's office building's common areas that are open to the public so as to provide and facilitate public access to the tenant's office, and (ii) while, upon consideration of the totality of the relevant circumstances, it is reasonably foreseeable that the act of one or more third persons will harm the tenant's employee, and (2) a hotel owes the "business visitor" "special relationship" duties to an employee of the company hired by the hotel to provide cleaning services to the restrooms in the hotel (i) while the employee is in one of the public restrooms in the hotel, and (ii) while, upon consideration of the totality of the relevant circumstances, it is reasonably foreseeable that the act of one or more third persons will harm the employee.

Jane Doe argues

> that because [Jane Doe] was a Sublessee, she stood more in the position of the Plaintiff in *Doe v. Grosvenor Properties (Hawaii) Ltd.* in which the Hawai'i Supreme Court noted these important factors: defendant Grosvenor runs a building open to the public at large (identical to [Jane Doe's] situation), the injury there was related to a common area of the building ( [Jane Doe] is alleging injury related to a malfunctioning freight door, unlocked bathroom, unauthorized person in the building after the building was supposedly secured, and general failure of the building-provided security), and Grosvenor had a duty of care in managing the building.

■ Jane Doe further argues that "as a subtenant", she was a business visitor of both the tenant and the landlord. In light of the precedent cited above, we disagree. If Jane Doe had been a tenant, she would not have been a business visitor to the landlord's office building. As a subtenant, she does not have

greater rights than if she was a tenant. In this context, there is no relevant difference between a tenant and a subtenant. Neither a tenant nor a subtenant is a business visitor of the landlord's office building.

Jane Doe further argues

that where a business establishment does hire a security guard to protect it and its patrons against criminal conduct of third parties, the business will be liable for harm which results because of the negligence of a security guard. See *Modern Tort Law* section 39.11, Duty to Control Conduct of Third Persons, at page 400; *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984).

Thus, irregardless if [Grosvenor] had a duty in the first instance or because it did in fact provide security services even in the absence of a duty, the evidence was such that the lower court erred in granting Summary Judgment in their favor.

Jane Doe further argues that

even if there was no duty in the first instance, the Landlord or Business can be held liable for harm if it voluntarily provides security services which results in harm because of negligence of the security services, negligently undertakes to provide security measures, or retains control over the premises and fails to use ordinary care in maintaining the premises in a reasonably safe condition. *Modern Tort Law* section 39:42.

In light of the jury's decision that Safeguard is not liable for negligence, these arguments are not relevant.

Jane Doe further argues

that this Honorable Court should revisit this [duty of Landlord to Tenant] issue in light of modern times and changing conditions. We first note that some commentators have called virtual landlord immunity, "a scandal." Quinn and Phillips, *The Law of Landlord–Tenant: A Critical Evaluation of the Past With Guidelines for the Future*, 38 Fordham L.Rev. 225 (1969). In light of the Hawai'i Supreme Court precedent cited above, this argument must be presented to the Hawai'i Supreme Court, not to this court.

2.

Jane Doe argues that

[i]n *Trentacost [v. Brussel*, 82 N.J. 214, 412 A.2d 436 (N.J.1980) ], the New Jersey Supreme Court noted that the majority of jurisdictions have found an implied warranty of habitability in the landlord-tenant context. Hawai'i is one of those jurisdictions, *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969). The New Jersey Supreme Court therefore held that:

[t]he landlord's implied warranty of habitability obliges him to furnish reasonable safeguards to protect tenants from foreseeable criminal activity on the premises.

*Trentacost* at 443.

[Jane Doe] also notes and submits that an important distinction in this case is that she need not assert that the mere failure to provide security was a breach of the implied warranty, rather, she is arguing that because the Landowner provided security services that it and the security company implied warranted protection for its tenants against the criminal acts of third parties.

In light of the precedent noted in the discussion above, we disagree.

In *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969), the Hawai'i Supreme Court first applied the theory of implied warranty of habitability and fitness for the use intended. The supreme court stated, in relevant part, as follows:

At common law when land was leased to a tenant, the law of property regarded the lease as equivalent to a sale of the premises for a term. The lessee acquired an estate in land and became both owner and occupier for the term subject to the ancient doctrine of caveat emptor. Since rules of property law solidified before the development of mutually dependent covenants in contract law, theoretically once an estate was leased, there were no further unexecuted acts to be performed by the landlord and there could be no failure of consideration. . . .

Given the finality of a lease transaction and the legal effect of *caveat emptor* which placed the burden of inspection on the tenant, the actual moment of the conveyance was subject to an untowards amount of legal focus. Only if there were fraud or mistake in the initial transaction would the lessee have a remedy. . . .

The rule of *caveat emptor* in lease transactions at one time may have had some basis in social practice as well as in historical doctrine. . . . There was generally equal knowledge of the condition of the land by both landlord and tenant. The land itself would often yield the rents and the buildings were constructed simply, without modern conveniences like wiring or plumbing. Yet in an urban society where the vast majority of tenants do not reap the rent directly from the land but bargain primarily for the right to enjoy the premises for living purposes, often signing standardized leases as in this case, common law conceptions of a lease and the tenant's liability for rent are no longer viable.

(Internal citations omitted.)

In *Lemle,* the plaintiff and his family camped in the living room and were without sleep due to natural apprehension of the rats which made noise scurrying about on the roof and invaded the house through the unscreened openings. *Id.* at 434, 462 P.2d at 474. The supreme court ultimately decided that the landlord cannot enforce the lease when the facts demonstrate the uninhabitability and unfitness of the premises for residential purposes.

In *Cho Mark Oriental Food v. K & K Intern.,* the Hawai'i Supreme Court addressed the issue of an implied warranty of habitability in the context of a commercial lease. 73 Haw. 509, 836 P.2d 1057 (1992). The court held that

[w]hile Hawaii was one of the first jurisdictions to extend the theory of implied warranty of habitability and fitness for intended use to residential leases . . . this court has never extended the theory to commercial leases. Few jurisdictions have done so. In the few cases that have extended such an implied warranty to a commercial lease, the subject lease has expressly pro-

vided that the lessor would furnish the disputed service. *Id.* at 541, n. 1 836 P.2d at 1061, n. 1 (internal citations omitted).

■ Hawai'i generally not applying the theory of an implied warranty of habitability to commercial leases, and Jane Doe's sublease being a commercial sublease without any special clause, her claim on this basis was correctly adjudicated.

### 3.

■ Jane Doe argues that defense counsel Robert P. Richards clearly committed misconduct in his closing argument by interjecting his own personal opinion and his family into his closing argument. The relevant argument at trial was as follows:

Now, let's get back to the number. I can give [Jane Doe] special damages and give her $5,000 in general damages. Counsel will then get up on rebuttal. Because, remember, he has the last say, and he will say how dare you, that's ridiculous. He will go on and on and liken to if you think for one minute that Mr. Richards's family gone through a similar experience that Mr. Richards would accept $5,000. You know what? This is probably the best evidence this is decided on liability. Mr. Richards's family would not be in here unless the defendant in this case were the assailant. And Mr. Richards certainly would not be in here as to any member of his family, recognizing, as anybody with common sense knows, that you have a responsibility. You are in the best position to protect yourself. And you, working after hours, a member of Mr. Richards [sic] family or anyone else, doesn't close and lock an office door that is available to be closed and locked, doesn't close, doesn't check to make sure that the suite door has been locked. The fact is, ladies and gentlemen, my client, Safeguard Services, a Hawaii security company, is a fine security company. They performed fine in this instance. They perform fine in other instances. And for one minute if they had not, wouldn't that evidence be here?

Ladies and Gentlemen, they were not negligent. And your verdict must reflect that fact. Thank you.

The Court: Members of the jury, the Court is going to take a ten minute recess at this time. Please do not discuss the case.

In *Ditto v. McCurdy*, defense counsel urged "jurors ... to place themselves or members of their families or friends in [the] place of [a] person who has been offended and to render [the] verdict as if they or either of them or [a] member of their families or friends were similarly situated." 86 Hawai'i 93, 127, 947 P.2d 961, 995 (1997). The Hawai'i Supreme Court noted that these types of remarks are improper and a violation of the Hawai'i Code of Professional Responsibility DR7–106(C)(4) which provides in part: "a lawyer shall not assert his [or her] personal opinion as to the credibility of a witness...." *Id.*

Jane Doe contends that defense counsel violated Hawai'i Rules of Professional Conduct Rule 3.4 (Supp.2003) which states, in relevant part, as follows:

RULE 3.4 FAIRNESS TO OPPOSING PARTY AND COUNSEL

A lawyer shall not:

. . . .

(g) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused[.]

 Grosvenor Defendants contend that Jane Doe is in violation of the rule that "[a] party may not rely on alleged trial misconduct as a ground for new trial unless the party had objected to that conduct and brought it to the attention of the court." *Stewart v. Brennan*, 7 Haw.App. 136, 148, 748 P.2d 816, 824 (1988) (internal citations omitted). In *Ditto v. McCurdy*, this court also stated, in relevant part, as follows:

Ditto points out, however, that Dr. McCurdy "never objected during Ms. Ditto's closing argument. Thus he has waived all objections." Ditto is correct. "It is well settled that objections not raised or properly preserved at trial will not be considered on appeal." (internal citations omitted). An appellant must, under the provisions of the HRAP, designate "where in the record the alleged error occurred and when it was objected to," HRAP 28(b)(4), and provide "a quotation of the grounds urged at the trial for the objection and full substance of the evidence admitted or rejected." *Id.* at 28(b)(4)(A).

86 Hawai'i 93, 127, 947 P.2d 961, 995 (1997). In the instant case, Jane Doe "never objected during ... closing argument" and similarly has thereby "waived all objections."

In *State v. Fox*, 70 Haw. 46, 56 n. 2, 760 P.2d 670, 676 n. 2 (1988), the Hawai'i Supreme Court summarized the criteria for recognizing plain error:

In civil cases, the plain error rule is only invoked when "justice so requires." We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import.

(Citations omitted.) We conclude that Jane Doe's case does not warrant invocation of the plain error rule.

4.

 Once all the evidence has been presented, it becomes the court's fundamental duty to properly instruct the jury on the law on the precise issues of fact it is to decide. *Montalvo v. Lapez*, 77 Hawai'i 282, 291 n. 13, 884 P.2d 345, 354 n. 13 (1994). Furthermore, because

[t]he trial court is the *sole source* of all definitions and statements of law.... It is the *duty of the circuit judge* to see to it that the case goes to the jury in a clear and intelligent manner, so that they may

have a clear and correct understanding of what it is they are to decide.

*Id.* (internal citations and quotation marks omitted; emphasis in original).

■ The relevant jury instructions that were given at trial were as follows:

The elements of a claim for negligence are:

One, the defendant owed a duty to the plaintiff of reasonable care against a foreseeable risk of injury;

Two, the defendant breached such a duty by failing to exercise reasonable care; and

Three, the defendant's breach of duty was a legal cause of plaintiff's injury.

Negligence is the doing of some act which a reasonably prudent person would not do or the failure to do something which a reasonably prudent person would do under the circumstances as shown by the evidence. It is the failure to use ordinary care.

. . . .

To establish that defendant owed a duty to plaintiff, plaintiff must prove by a preponderance of the evidence that defendant voluntarily undertook a duty of reasonable care to protect her against criminal harm.

One who gratuitously or for consideration to render service to another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person resulting from his failure to exercise reasonable care to protect his undertaking if:

A, his failure to exercise reasonable care increases the risk of harm; or

B, he has undertaken to perform a duty owed by the other to the third person; or

C, the harm is suffered because of reliance of the other or the third person upon the undertaking.

Even if you find that defendant had voluntarily undertaken a duty of reasonable care, it is not an insurer for protection against crime. The fact that a crime has occurred does not mean that defendant did not exercise reasonable care.

. . . .

In this case, the plaintiff is suing the defendant for injuries or damages resulting from the incident of November 20, 1993. The jury will determine whether any of the parties of this case were negligent and whether such negligence on the part of a party was a legal cause of plaintiff's injuries or damages. If you find that the defendant's negligence was a legal cause of plaintiff's injuries for damages you must determine the total amount of compensation to said plaintiff due to the injuries or damages suffered, whether or not you find that plaintiff's own negligence was also a legal cause of her injuries or damages.

. . . .

One test that is helpful in determining whether or not a person was negligent is to ask and answer whether or not if a person of ordinary presence had been in the same situation and possessed of the same knowledge he would have foreseen or anticipated that someone might have been injured by or as a result of action or inaction. If such a result from certain conduct would be foreseeable by a person of ordinary prudence with like knowledge and in like situation and if the conduct reasonably could be avoided, then not to avoid it would be negligent.

Reasonable foreseeability is to be determined in the light of all of the circumstances presented to you under the totality of these circumstances.

Jane Doe contends that the trial court reversibly erred when it "submitted the issue of an existence of a duty to the jury[.]" She argues that *"Maguire, supra,* indicated that the existence of a duty is a legal question for the Courts and only the foreseeability of harm is a jury/factual question."

We conclude that Jane Doe misinterprets *Maguire.* In *Maguire,* the Hawai'i Supreme Court stated (1) "under the business visitor relationship exception, a landholder only has a duty to protect against criminal acts of third persons if such acts are reasonably foreseeable", 79 Hawai'i at 114, 899 P.2d at 397, and (2) "the issue of reasonable foreseeability is ordinarily subject to a determination by the trier of fact." 79 Hawai'i at 117, 899 P.2d at 400 (footnote omitted).

In Jane Doe's case, the "business visitor" "special relationship" question pertained to

the Grosvenor Defendants, not Safeguard. Thus, the court instructed the jury that "[t]o establish that defendant [Safeguard] owed a duty to plaintiff [Jane Doe], plaintiff [Jane Doe] must prove by a preponderance of the evidence that defendant [Safeguard] voluntarily undertook a duty of reasonable care to protect [Jane Doe] against criminal harm." Jane Doe contends that the trial court "erroneously limited the existence of a duty to a 'voluntary undertaking' by [Safeguard]." We disagree. Assuming Safeguard had a duty to Jane Doe on that basis, see *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 73 Haw. at 169, 829 P.2d at 518, it had no other relevant duty to her.

## CONCLUSION

Accordingly, we affirm (1) the March 5, 1998 Order Granting Defendants Grosvenor Center Associates and Grosvenor International (Hawaii) Ltd.'s Motion for Summary Judgment Filed on December 29, 1997; (2) the April 21, 1999 Order Granting in Part and Denying in Part Defendant Safeguard Services, Inc.'s Motion in Limine to Preclude Reference to Any Implied Warranty of Habitability; or in the Alternative, Motion for Partial Directed Verdict Filed on March 17, 1999; and (3) the June 6, 2002 Final Judgment.